(No. 12975.—Judgment affirmed.)

THE CHICAGO RAWHIDE MANUFACTURING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(HATTIE TOPHOVEN, Defendant in Error.)

*Opinion filed February 18, 1920—Rehearing denied April 8, 1920.*

1. WORKMEN'S COMPENSATION—*employee's wife cannot testify to his statement as to cause of injury resulting in death.* In a proceeding for compensation for the death of an employee the employee's wife cannot testify to what her husband told her concerning the cause of the injury, which finally resulted in his death.

2. SAME—*when infection with anthrax is an accident arising out of the employment.* Where an employee dies as a result of an infection with anthrax bacilli, evidence that he scratched a pimple on his neck while in the course of his employment as foreman in a tannery department, that in the ordinary period of inoculation the neck began to swell until death resulted, and that he was not at any place where he was likely to come in contact with anthrax except at the tannery, is sufficient to sustain a finding of the Industrial Commission that the employee contracted the disease by an accident arising out of his employment.

3. SAME—*when notice of accident is sufficient.* Where an employee in a tanning factory dies as a result of an infection with anthrax bacilli, a statement by the employee's wife to the employer on the day of the funeral, and within a week after the disease began, that her husband died of an infection from a poisoned hide, is sufficient notice of the accident under section 24 of the Compensation act.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

GALLAGHER, KOHLSAAT & RINAKER, for plaintiff in error.

HENRY POLLENZ, for defendant in error.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

This is a writ of error sued out to reverse the judgment of the circuit court of Cook county affirming an award by the Industrial Commission against the Chicago Rawhide

Manufacturing Company of compensation for the death of Charles T. Tophoven, and the only questions presented are whether there is any evidence in the record tending to show that the deceased met with an accident arising out of and in the course of his employment, and whether there is any evidence tending to show notice to the plaintiff in error within thirty days after the happening of such accident.

The plaintiff in error was engaged in the business of tanning hides. The deceased, Charles T. Tophoven, was employed as foreman of the chrome tannery department. His duties were to oversee the work in connection with the tanning of the hides and did not require him to handle the hides. On Saturday morning, December 12, 1915, Frank J. Dulinski, who was foreman of the halter department, saw Tophoven in the locker room, where he was changing his clothes to go to work. He asked Dulinski for a pin to open a small pimple back of and just below his left ear. Dulinski had no pin and Tophoven scratched the pimple off with his finger nail. It bled and Dulinski wiped the blood off Tophoven's neck with a towel. There was no scratch but it looked a little red. That evening, after supper, Tophoven's wife noticed, as she testified, a scratch about a half-inch long on the left side of his neck, and he told her that while he was looking through some hides that morning one fell back and scratched his neck. No one else saw the scratch and his statement was hearsay and incompetent. Sunday Tophoven spent at his home. Some visitors were there, they were playing music, and there is no evidence that Tophoven was sick though the visitors noticed the red spot on his neck. On Monday morning Tophoven went to work and during the forenoon went to the West Side Emergency Hospital, from which he returned with his neck bandaged and with some medicine to put on it. His neck was swollen. He went home about one o'clock for about an hour and then went back to work, coming home again about half-past five,—a little earlier than usual. On Tues-

day morning the disease was progressing much more rapidly. On getting up Tophoven was shaky and dropped his bottle of medicine. His wife called Dr. Larson, who came between seven and eight o'clock, made a superficial examination and gave a hypodermic injection. There was a swelling on the left side of the face and a pimple as big as a pea, which seemed to be cutting its way and forming other little pimples or hard tissue around it. The doctor was called again about nine or ten o'clock. The whole face was swollen and the pimple was as large as a nickel, was livid all around and its center was hollow. The doctor cut out a piece of tissue which he took to the laboratory of St. Elizabeth's Hospital and delivered to Dr. Sidwell for examination. By ten o'clock Tophoven had lost the power of speech, he gradually lost consciousness and he died about midnight. The certificate of death made by Larson gave diabetes as the cause of death. Larson got the report of the microscopical examination the next morning. The tissue was infected with anthrax bacilli, and it clearly appears that these were the cause of death.

William H. Emery, who was president of the plaintiff in error, was at the house of the deceased on the next Friday, the day of the funeral. Mrs. Tophoven testified that at that time she told him her husband's death was caused by anthrax from a poisoned hide. Emery denies that anthrax was mentioned but says that Mrs. Tophoven told him that the death might have been from contagion from blood poisoning; that a man from the city coroner's office was expected and they had better not wait. It was this conversation which is relied upon as constituting the notice to the employer of the accident, as required by section 24 of the Workmen's Compensation act.

Anthrax, as appears from the record, is an infectious and usually fatal disease of animals,—especially sheep and cattle,—and occasionally of man. It is also called splenic fever and wool sorter's disease. The men who become its

victims are usually those engaged in handling wool, hides or animals that are infected. The disease may be acquired either by breathing in or inhaling the bacteria or by inoculation through an abrasion of the skin. The latter is the most usual way and where the neck is affected the disease is fatal; where other parts of the body are affected the subject occasionally recovers. The period of inoculation after infection is from a few hours to several days.

It is a reasonable conclusion from the evidence that the anthrax bacillus came in contact with the abrasion on Tophoven's neck, caused by his scratching off the pimple on Saturday morning. Nobody saw the anthrax bacilli enter his system. In the nature of things the entrance of the microscopic organism was not perceptible, but the broken skin was there, the swelling followed, the characteristic malignant pustule developed, the rapid destruction of tissue occurred, the anthrax bacillus was present and the speedy death resulted. This sequence of events is scarcely susceptible of any explanation except the acquiring of the anthrax bacillus from the hides in plaintiff in error's tannery. Indeed, no attempt is made by the plaintiff in error to account for Tophoven's inoculation with anthrax bacilli, but the plaintiff in error relies wholly upon the insufficiency of the proof against it.

There is no direct proof that there was, or ever had been, any hide in the factory where Tophoven worked which was affected with anthrax, but from the fact that the disease is primarily one which affects especially sheep and cattle; that its human victims are usually men engaged in handling wool, hides or animals; that Tophoven was not at any place where he was likely to come in contact with anthrax except at the plaintiff in error's factory; that the pimple on his neck was scratched until it bled and the blood was wiped off with a towel; that he continued at work there and within the ordinary period of inoculation the neck began to swell and successive steps in the progress

of the disease occurred, ending in death, an inference may justifiably be drawn that these results, thus following in regular succession, were a consequence of the only cause adequate to produce them which has been suggested,—the existence of anthrax germs in the factory where the plaintiff was at work and their contact with his broken skin. These circumstances tend to show that Tophoven contracted the disease by an accident arising out of his employment.

In *Matthiessen & Hegeler Zinc Co.* v. *Industrial Board,* 284 Ill. 378, the question what is meant by an accidental injury was considered, and we said: "The words 'accident' and 'accidental injury' imply, and the provisions for notice to the employer within thirty days after an accident and his report to the Industrial Board of accidental injuries show, that an injury, to be accidental or the result of an accident, must be traceable to a definite time, place and cause, but if there is such a definite time, place and cause and the injury occurs in the course of the employment the injury is accidental within the meaning of the act and the obligation to provide and pay compensation arises. While it is not intended, and perhaps not possible, to give a definition of the words used in the act as applied to all possible circumstances, it may safely be said that an injury is accidental, within the meaning of the act, which occurs in the course of the employment unexpectedly and without the affirmative act or design of the employee."

There was evidence from which the Industrial Commission might find that the deceased contracted anthrax on Saturday morning at the plaintiff in error's factory by accidentally coming in contact with the anthrax bacillus in the course of his employment and that his death was the result of such accident. In *Turvey* v. *Brinton,* A. C. (1905) 230, and *McCauley* v. *Imperial Woolen Co.* 261 Pa. St. 312, the contracting of anthrax, from which the employee died, was held to be an accidental injury.

Section 24 of the Workmen's Compensation act provides that no proceedings for compensation shall be maintained unless notice of the accident has been given the employer as soon as practicable but not later than thirty days after the accident, and that notice of the accident shall, in substance, apprise the employer of the claim of compensation made and state the name and address of the employee injured, the approximate date and place of the accident, if known, and in simple language the cause thereof. It is further provided that no defect or inaccuracy of the notice should be a bar to the maintenance of proceedings by the employee unless the employer proves that he is unduly prejudiced in such proceedings by such defect or inaccuracy. The plaintiff in error knew of the death of the employee and his name and address. Mrs. Tophoven testified that she told the president of the corporation on the day of her husband's funeral that he died from anthrax poisoning from a poisoned hide. This was as specific notice as it was possible to give at the time. The plaintiff in error knew where the deceased worked and when he stopped working. It was as well acquainted with the facts and had as good means to learn the circumstances and cause of the accident as Mrs. Tophoven, and the record does not indicate any reason why the plaintiff in error was unduly prejudiced by reason of any defect or inaccuracy in the notice.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*