CHRISTOPHER *v.* CITY GRILL, et al.

Nov. 9, 1953

No. 38931 42 Adv. S. 1 67 So. 2d 694

Charles C. Jacobs, Jr., Cleveland, for appellant.

Holcomb & Curtis, Clarksdale, for appellees.

Kyle, J.

This case is before us on the appeal of Mrs. Francis E. Christopher, from a judgment of the Circuit Court from the Second Judicial District of Bolivar County reversing an order of the Mississippi Workmen's Compensation Commission dated November 10, 1952, allowing compensation and other expenses to the appellant.

The appellant was employed as a waitress and dishwasher by the City Grill, of Cleveland, Mississippi, and became disabled on or about April 1, 1952, on account of

the breaking out of rash on her hands and wrists, which was described by her physician as a severe contact dermatitis. The appellant had been employed by the City Grill about 5½ years, except during a period of about two months in 1951, while she was in Kansas City. She returned from Kansas City in July 1951 and resumed her work as a waitress at the City Grill. During the month of February 1952 a dishwasher at the City Grill quit, and the appellant thereafter performed the duties of a dishwasher and waitress. A short time after she began washing dishes her hands became infected with a rash. She went to see Dr. O. E. Ringold of Cleveland, who treated her hands for a period of several days, but there was no improvement in her condition, and Dr. Ringold advised her to go to see Dr. Vonnie A. Hall in Memphis. She did not go to see Dr. Hall immediately, but went to see Dr. Jerry Adams of Cleveland, who treated her for a few days. Dr. Adams placed her in a hospital, and she remained in the hospital eleven days. Her condition did not improve, and after being hospitalized again she was again advised to see Dr. Hall in Memphis. She then went to Memphis and placed herself under treatment by Dr. Hall. Dr. Hall found that the appellant "had about the hands, forearms and wrists a severe contact dermatitis," and treated her for the infection until she was cured. In his report to Dr. Adams, Dr. Hall said, "Just what the cause of the original eruption was I do not know, but evidently it must have been something in her work." The appellant was totally disabled until June 27, 1952, when she returned to work at the City Grill. She was still working at the City Grill at the time of the hearing before the attorney referee on September 18, 1952.

The appellant testified at the hearing before the attorney referee that her duties as an employee in the cafe were mainly the duties of a waitress, and that she had not worked continuously as a dishwasher, until the col-

ored girl who washed dishes quit sometime during the month of February; and the appellant thought that the rash on her hands was caused by the soap that she used in washing dishes. She stated that Dr. Adams and Dr. Hall told her after she had been cured not to use anything but ivory soap, and that after she returned to work on June 27, she used nothing but ivory soap. She had experienced no further trouble on account of the skin infection.

R. L. Dorff, a member of the partnership that operated the cafe, testified that the soap or washing powder that he used in the cafe from July 1951 until March 1952 was purchased from a supply house in Atlanta which was one of the finest restaurant supply houses in the south. Dorff stated that he had been using the soap about 5½ years. He said the soap came in 200 or 250 pound drums, which he kept in the storeroom. About a cupful of the soap or maybe three-fourths of a cupful was used in each washing sink. He stated that some of the numerous employees who had worked for him had purchased other soap that they thought was better and had had it charged to him. He stated that as a rule he had a colored girl to wash the dishes, but the colored girl left and the appellant took over her duties about six or eight weeks prior to April 1, 1952. He stated that waitresses did not wash dishes when he had other help. The waitresses had been helping wash the dishes for a period of about six or eight weeks prior to April 1st. In answer to a question propounded by the attorney referee Mr. Dorff stated that after the appellant took over the colored girl's job it was her duty to wash the dishes. Her working time began at 5:00 a. m. and lasted until 1:00 p. m. Dorff stated that the appellant had not had any trouble with the disease since she had started using ivory soap.

Dr. O. E. Ringold stated that in his opinion the breaking out was an allergy type of dermatitis, and the breaking out was an allergic reaction of the skin to certain

things that were poisonous to the skin. He stated that the infection manifested itself by the formation of blisters with a crust around them. He said that the condition was not the kind that was sometimes referred to as dish water hands. ''This is more like poison oak. Dermatitis is something caused by foreign substances.'' The appellant's condition was due to her coming in contact with something that she was allergic to. He thought that there was no doubt that her condition arose out of something she was doing as a waitress and dish washer.

The testimony of Dr. J. E. Adams, Jr., was to the same general effect as that of Dr. Ringold. He described the infection as definitely a contact dermatitis, ''caused by something you come in contact with.'' He said that the appellant had a ''pretty severe dermatitis. * * * She has about as rough a case as I ever saw. * * * We had to keep her hands completely wrapped and soaked. If we hadn't, they would have cracked open. It looked to me like it was pretty painful.''

The attorney referee found that the appellant had sustained an accidental injury, to-wit, contact dermatitis, from which she was totally disabled from April 2, 1952, until June 27, 1952, and that the injury arose out of and in the course of her employment and was compensable at the rate of $20 per week; and that as a result of the accidental injury the appellant had incurred medical expenses, hospital expenses and drug bills, and also traveling expenses in making three trips from Cleveland, Mississippi, to Memphis, Tennessee, for treatment by Dr. Hall. And the attorney referee found that the appellant was entitled to an award of compensation for the time lost from her work, that is to say from April 2, 1952, through June 26, 1952, at the rate of $20 per week, and that the defendant carrier should also pay all doctors' bills, drug and hospital bills, and all necessary expenses incurred by the appellant in making the three trips from Cleveland, Mississippi, to Memphis, Tennessee, for treat-

ment by Dr. Hall; and an order was entered by the attorney referee to that effect, which was affirmed by the Workmen's Compensation Commission.

The circuit court, on appeal, reversed the order of the Workmen's Compensation Commission affirming the order of the attorney referee and denied the appellant's claim.

Three grounds for reversal of the order of the Commission are set out in the judgment of the circuit court, namely, (1) That the statement of fact contained in the order of the attorney referee to the effect that the claimant, about six weeks or two months before she became disabled, was given a new kind of soap or washing powder to use, is not supported by the evidence; (2) that, as a matter of law and fact, the claimant did not sustain an accidental injury on or immediately prior to April 1, 1952, while employed by the City Grill, and the Commission therefore erred in holding that the claimant's disability was compensable under the Workmen's Compensation Law; and (3) that the claimant was not entitled to recover compensation or expenses incurred by her in obtaining medical treatment for the injury sustained by her.

We think that the circuit court erred in reversing the order of the Workmen's Compensation Commission affirming the award of compensation to the claimant.

This case in our opinion is controlled by the opinion rendered by this Court in the case of Hardin's Bakeries, Inc., et al. v. Ranager, ........ Miss. .........., 64 So. 2d 705, decided on May 11, 1953, in which the Court held that a baker's disability caused by an allergy resulting from his contact with a mitten which he was required to use in handling hot pans of bread as they came from the oven, was an accidental injury within the purview of the Mississippi Workmen's Compensation Act.

In the case that we have here the attorney referee found that the appellant had sustained an accidental

injury, and that the injury arose out of and in the course of her employment; and we think that the finding of the attorney referee is supported by substantial evidence. But the appellees argue that the appellant's injury was not accidental; that it was more in the nature of an occupational disease; and that it was not the intention of the Legislature, in enacting the Mississippi Workmen's Compensation Act, to cover occupational diseases. These arguments, however, were answered by this Court in the opinion rendered in the Hardin's Bakeries case, supra, where the injury dealt with was very similar to the injury disclosed by the record in this case. In that case it was held that, "under our compensation law it is not necessary that an accidental injury as therein defined must result suddenly, nor is it necessary that it result from the application of external force."

In the case of Webb v. New Mexico Publishing Company, 47 N. Mex. 279, 141 P. 2d 333, 335, 148 A. L. R. 1002, which was cited by this Court in the Hardin's Bakeries case, supra, the Court said: "The facts on the question of whether there was an accident are these: It was necessary for appellee, in the course of his employment, to frequently wash his hands, for which purpose his employer furnished soap. The soap furnished was one to which he was unknowingly allergic, and its use caused a breaking out of large, painful eruptions on his hands, so that within approximately six months appellee had become completely disabled from performing any work. The injury from the use of the soap could not have been reasonably expected or foreseen, and his injury constituted an unlooked for mishap, which was neither expected nor designed." The Court then enumerated three classes into which industrial injuries may be divided, the second of which is "Those injuries in which there is no accident separate and distinct from the injury that caused it, such as strain which causes back injury, rupture, blood clots, hemorrhage; ordinarily the unin-

tended result of an intentional act,'' and then said: ''The washing of appellee's hands was a necessary part of the labor for which he was employed. His injury, therefore, arose out of and was suffered in the course of his employment, and if accidental, it was compensable. It comes under our second classification; an injury that was the unintended result of an intentional act; received while 'performing his labor under the usual and ordinary conditions of his employment.' ''

The appellee's attorneys in their brief say that there was no direct proof in the case that we have here which connected the claimant's disability with her employment. But we think that there was substantial proof of a causal connection between the claimant's employment and her disability. The skin infection on her hands manifested itself soon after she took over the duties of the dishwasher. Dr. Adams, after examining the claimant and treating her, diagnosed her ailment as contact dermatitis caused by the soap or washing powder used in washing the dishes. Dr. Hall agreed with Dr. Adams that the cause of the original eruption must have been something in her work. And both doctors advised her not to use the same kind of soap thereafter, but to use ivory soap in washing dishes. Dr. Ringold testified that the dermatitis in his judgment was caused by something the claimant came in contact with—something she was allergic to, and that it arose out of something she was doing as a waitress and dishwasher. Dr. Ringold thought that the dermatitis may have been caused by the chlorine in the water, but he was not sure. In his opinion, the ailment was caused by some substance used in her work. After she began using another kind of soap, as her doctors advised, the skin eruption, whatever the cause may have been, did not break out again. The appellant and her employer both testified that the rash developed within a few weeks after the appellant took over the duties as a dishwasher, and that the rash did not reappear after the

appellant began to use ivory soap when she resumed her duties on June 27.

We think that there was ample testimony to support the findings of the hearing officer that the appellant's injury was an accidental injury arising out of and in the course of her employment.

There is no merit in the appellees' contention that the order of the Workmen's Compensation Commission should have been reversed because the attorney referee erroneously stated in his opinion that the appellant as a dishwasher was given a new kind of soap or washing powder to use. Whether the soap which the appellant was required to use was a new kind of soap or not was immaterial.

For the reasons stated above the judgment of the circuit court is reversed and the order of the Workmen's Compensation Commission, awarding compensation to the appellant for the period beginning April 2, 1952, and ending June 26, 1952, and requiring the payment by the defendant carrier of the necessary doctors', drugs and hospital bills and the traveling expenses mentioned in the order, is reinstated and affirmed; and the cause is remanded to the circuit court, with instructions to remand the same to the Workmen's Compensation Commission for the purpose of carrying out the order of the Commission allowing the appellant's claim.

Reversed and remanded.

*Roberds, P. J.*, and *Hall, Holmes* and *Lotterhos, JJ.*, concur.