THYER MANUFACTURING COMPANY, et al. *v.* MOONEY

No. 43411 April 5, 1965 173 So. 2d 652

*M. M. Roberts,* Hattiesburg, for appellants.

*Pyles & Tucker,* Jackson, for appellee.

Rodgers, J.

This is a workmen's compensation case, growing out of a claim for total and permanent injury alleged to have been caused by contact dermatitis.

Appellee, Willie F. Mooney, was forty-eight years of age at the time of his disability, a farmer, and was employed by appellant, Thyer Manufacturing Company in 1953. He was given a job as a painter. He had never worked as a painter before and had never suffered from dermatitis. Thereafter, in 1955, he developed a rash. The use of paint thinner caused large blisters to form on his hands and arms, and these blisters became infected. The company doctor treated appellee for a month and the rash disappeared. His work required that he again come into contact with white paint primer. This paint was applied with a roller, and a part of the paint dripped on the floor, and appellee stood in such a way as to get the paint on his hands and legs. He again broke out in a rash, covering a large part of his body. Nevertheless, appellee continued the same work to 1956-1957, and continued to be troubled with skin rash.

In 1958, he was transferred from the paint department on the advice of Dr. C. P. Crenshaw, and was assigned the job of bundling nails, screens and glasses, but occasionally it became necessary for him to help out in the paint department, and on every occasion when his work required him to go into the paint department, he would again break out with a rash.

In 1960, the company moved into new quarters and he was required to move the material to be painted to and from the painter, and he again came into direct contact with the paint, and he again had a very annoying attack of rash all over his body. He claimed he has never been completely healed since that time. In July 1960, he was "laid off", but was called back to work in 1961 and worked about two weeks, when he came

into contact with paint and again developed a serious case of rash. He went to the doctor and was discharged by him as having been cured on July 31, 1961, after he had been sent to a dermatologist.

He left the service of the company in July 1961. He testified that he has not been able to do any work since that time because when he gets hot a rash breaks out all over, his eyes itch, his throat becomes irritated and he has to take shots to get relief.

Several of appellee's coworkers and some of his neighbors testified they knew about his physical condition, and some of these witnesses testified that they worked with him and they knew that when he went into the paint shed he would break out with a rash. One of the witnesses testified that appellee still had a rash at the time of the hearing. Several doctors were called to testify. Dr. Crenshaw was the company physician and began to treat appellee in 1955 and continued to treat him until he was finally discharged as cured. Dr. Crenshaw first diagnosed appellee's infirmity as contact dermatitis. After Dr. Crenshaw had referred appellee to Dr. Chester Farmer, a dermatologist, both doctors diagnosed appellee's ailment as neurodermatitis. Thereafter, on August 26, 1961, appellee went back to see Dr. Crenshaw, and on August 28, 1961, he went to see Dr. Farmer because he was still suffering from a rash, but both doctors had reached the conclusion that the appellee was suffering from neurodermatitis and no additional treatment was prescribed.

Dr. Andrew W. St. Clair testified that he examined appellee, Mr. Mooney, in December 1961; that he had a history of appellee's condition beginning in 1955 when claimant had washed his hands in paint thinner; that the rash recurred and was responsive to treatment alternately as he was exposed to paint, or was removed from exposure to paint. This doctor made various "patch tests", and found that he was allergic to two types of paint used at the Thyer Manufacturing Company; that

in his opinion the substances with which the complainant worked were causally related to his condition; that complainant was suffering a disabling physical condition; that Mr. Mooney had developed "increased sensitivity" from continued exposure, and will continue to need medical treatment so long as he has the rash. He discounted the diagnosis of neurodermatitis because of the location of the rash in the beginning of the onset.

During the time appellee, Mooney, worked for the Thyer Manufacturing Company, the following insurance companies were carriers of the workmen's compensation insurance: (1) New Amsterdam Casualty Company from January 1, 1955, to January 1, 1959; (2) The Liberty Mutual Insurance Company from January 1, 1959, to September 30, 1960; and (3) United States Fidelity & Guaranty Company from September 30, 1960, until the hearing before the attorney-referee.

At the conclusion of the evidence for the claimant, the court sustained a motion made by the New Amsterdam Casualty Company, releasing it because the claim against it was not made within the time allowed by the Workmen's Compensation Law.

Thereafter, an order was entered permitting a compromise and settlement between Mr. Mooney and the Liberty Mutual Insurance Company for the sum of $2,500, and one-half of the medical expenses due, covering a period of time from January 1, 1960 to September 1960. This order also provided that United States Fidelity & Guaranty Company (hereinafter called U. S. F. & G. Company) was the insurer from September 30, 1960, until the initial hearing of the case.

Thus it is seen that the U. S. F. & G. Company was the insurer during nine and one-half days from May 28, 1961, to June 4, 1961, at a time when the petitioner was recalled to work at his former job, and when it is claimed that he was again exposed and developed a rash.

The attorney-referee, after having heard all of the testimony, entered his written finding, wherein he set out that (1) complainant had sustained a fifty percent wage-earning loss as a result of contact dermatitis; (2) that continued exposure to paint in his employment had caused claimant to develop an increased sensitivity to paint; (3) that part of complainant's disability occurred in May 1961; (4) that complainant's weekly earning was $60; (5) that the injury of May 1961 contributed at least fifty percent to complainant's present disability; (6) that therefore his present wage-earning would be diminished to $30 per week; and (7) that two-thirds of $30 is $20, and one-half of $20 is $10. He then fixed the compensation due appellee for permanent partial disability from June 4, 1961, the last day claimant worked, at $10 per week. The employer and U. S. F. & G. Company were ordered to pay these benefits and medical expenses, less some accrued at the time of the settlement with Liberty Mutual Insurance Company. Appellants here requested a review by the full Commission, and appellee filed a cross-petition for review.

The full Workmen's Compensation Commission approved and sustained the order of the attorney-referee; whereupon, the claimant appealed to the Circuit Court of Covington County, Mississippi, and appellee cross-appealed.

The circuit judge heard the argument of the attorneys, and after having considered the entire record and pleadings on appeal, was of the opinion that defendants did not plead facts affirmatively to sustain an apportionment as required by Mississippi Code Annotated section 1475.5 (1956), and in accordance with Rule B 4 of the Mississippi Workmen's Compensation Law. The circuit court reversed the Commission and entered an order requiring Thyer Manufacturing Company and U. S. F. & G. Company to pay appellee Willie F. Mooney

for permanent total disability at the rate of $35 per week and to pay $165 medical benefits due, and medical benefits to become due, together with 6% interest on each installment of compensation as it became due, and damages provided by law.

## I

The Thyer Manufacturing Company and U. S. F. & G. Company have appealed to this Court and complain that the Workmen's Compensation Commission and the Circuit Court of Covington County should have found for appellee U. S. F. & G. Company as a matter of law. It is said that since the U. S. F. & G. Company was the last of three insurers of employer, one having been released because of the statute of limitations, and the other having settled and paid the claim against it for the period covered by its insurance contract, the U. S. F. & G. Company does not owe the claimant, for the reason that contact dermatitis was contracted during the periods covered by the previous contracts of insurance. This contention is based upon the testimony of the petitioner wherein he testified that the original onset and injury occurred in 1955, and recurred in 1960, and that thereafter the petitioner had never fully recovered. He said: "I became permanent with it — never been gone."

We are of the opinion, however, that this contention is not well-taken for the reason that there is ample medical testimony in the record from which the Commission could determine that the claimant suffered a new onset and injury in the time, and during the period covered by the insurance agreement of U. S. F. & G. Company. The testimony shows that claimant was suffering from contact dermatitis in May 1961, and was not discharged by the employer's doctor until July 31, 1961. Thereafter, claimant continued to suffer from dermatitis, but Drs. Crenshaw and Farmer, then diagnosed his condition as "neurodermatitis."

■■ Whether or not a workman is suffering from an injury growing out of his employment is a question of fact in the first instance for determination by the Workmen's Compensation Commission. Moreover, contact dermatitis is an injury this Court has heretofore recognized to be compensable under the Mississippi Workmen's Compensation Law. Komp Equipment Co. v. Clinton, 236 Miss. 560, 111 So. 2d 259 (1959); Hardin's Bakeries, Inc. v. Ranager, 217 Miss. 463, 64 So. 2d 705 (1953); Christopher v. City Grill, 218 Miss. 638, 67 So. 2d 694 (1953). ■■ Contact dermatitis is generally recognized as a compensable injury. See 99 C. J. S., *Workmen's Compensation* § 168 (1958); Annot. 148 A. L. R. 1017 (1944); 58 Am. Jur., *Workmen's Compensation* § 248 (1948); Schneider's Workmen's Compensation Text Vol. 3 § 953, *Dermatitis* (1943); and Cum. Supp. Vol. II § 953 (1964).

## II

It is next contended by appellants that they are entitled to a reduction in workmen's compensation payments, if any be due to the claimant, because of the amendment of Mississippi Code Annotated section 6998-04 (1952) to the Workmen's Compensation Law, by Chapter 277, General Laws of Mississippi for 1960, the pertinent part of which is as follows:

"Where a pre-existing physical handicap, disease or lesion is shown by medical findings to be a material contributing factor in the results following the injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such pre-existing physical handicap, disease or lesion contributed to the production of the results following the injury."

Appellants point out that through a period of eight years appellee "worked for his employer under three successive workmen's compensation insurers, and it is claimed

that he gradually and progressively grew worse through several years and finally became totally disabled'', and for that reason ''if some recovery should be allowed under the law and facts which is denied, still there should be a reduction because of this pre-existing condition, under authority of Section 6998-04 of the Mississippi Code 1942 as amended.''

 We do not agree with this contention for the following reason: The Mississippi Workmen's Compensation Law does not provide for contribution between insurance carriers. The apportionment provision of Mississippi Code Annotated section 6998-04 (Supp. 1962) refers only to the amount of compensation to which the injured employee will be entitled, not to how the payments of the compensation will be apportioned among those liable. The reduction in compensation benefits due to the results following injury by a pre-existing handicap, disease or lesion, refers to benefits which the injured employee will not receive at all, not to benefits which will be paid by someone else. The basic purpose of this apportionment provision was to encourage employers to employ handicapped persons with pre-existing disease or lesion, whom a prospective employer would be reluctant to employ in the absence of the apportionment provision because of the greater likelihood that he would become liable for workmen's compensation benefits to such an employee. This basic purpose of the statute was more evident when the statute required that such a pre-existing infirmity be discovered by a pre-employment physical examination. Thus, the statute is concerned only with a liability of the employer to the employee, and not to the employer's insurance carriers since whether the employer's workmen's compensation payment liability is paid by one of his carriers or apportioned among several of them is of no consequence to the employer in determining whether to hire a particular employee. In the instant case, where only one employer is involved,

but there is a succession of insurance carriers, the apportionment statute has no bearing on the contribution to be paid by each of the carriers.

■■ Moreover, the Workmen's Compensation Commission is an administrative agency, not a court of law, and there is no method provided by law by which this administrative agency may adjust equities between insurance carriers. Some states, however, have provided for a contribution between insurance carriers. See Larson, Workmen's Compensation Law § 95 (1961); Schneider, 12 Workmen's Compensation § 2503 (1959).

In the case of United States Fidelity & Guaranty Company v. Collins, 231 Miss. 319, 95 So. 2d 456 (1957), this Court held that the Commission had no power under the statute to order one insurance carrier to reimburse another which had erroneously made compensation payments, and that the two carriers must resort to a court of law to decide that issue. This case is not exactly in point on the issue but is indicative of the thinking of this Court on the question of contribution between insurance carriers.

### III

The Commission based its finding of "permanent partial disability" upon "the testimony of Dr. Sinclair that in his opinion claimant had developed increased sensitivity to these paints and that if he gets hot and perspires the rash becomes more disabling." Dr. Sinclair testified: "He's more sensitive to smaller doses of it, I would say. Originally he could be around the paint and not break out at all, but later he became sensitive to it." On the other hand, he testified in answer to the question: "How long does it take a man to get well, Doctor?", that "If he becomes allergic to nothing else, and you remove it and he's treated, he should be well in a few weeks if he has no more contact with it." He was asked: "Very well, then, Doctor, assume that he has not been in the presence of

paint since July of 1961, and that he still has a rash on his body, on his legs, then you are not testifying that that rash is due to that paint he got last year, are you?'' He answered: ''No, I'm not testifying to that.'' He was also asked: ''Doctor, when once established, does the sensitivity remain permanent?'' He answered: ''I would not say that.''

Dr. Crenshaw testified claimant would be allergic to paint thinner the rest of his life, and when he got over one spell of illness, until he was exposed to that same stimulating substance again, he would not be allergic any more, until he came into contact with it again. He was asked: ''Doctor, if you were called upon to make a preemployment physical examination and you had a history of a man who had allergies that Mr. Mooney has, would you pass him to work?'' The doctor answered: ''If he wasn't fixing to work around paint or paint thinner I would certainly put him to work.''

The claimant testified that he was exposed to the paint in 1960 and said: ''I've never been well or rid of it since.'' However, the claimant was asked whether or not during the period he was unemployed and ''During that period of time when you were away from the paint, did you have any difficulty with breaking out?'' He answered: ''No, sir.''

The claimant continued to work while he was being treated by the doctor for contact dermatitis and until he was ''laid off'' in 1960. He testified that the reason he did not work after July 1961 was because he was ''not able.''

■■ A claim for disability under Workmen's Compensation Law is not a suit to recover damages growing out of an industrial injury, but is compensation for loss of earnings as a result of an industrial injury, or the loss to the dependents of a worker because of his death. Miss. Code Annot. §§ 6998-04, 6998-05 (1952).

In the case of Komp Equipment Co. v. Clinton, 236 Miss. 560, 111 So. 2d 259 (1959), this Court said:

"Under these circumstances, the pertinent award should be temporary total disability benefits 'during the continuance of such disability.' Code Sec. 6998-09 (b). After the dermatitis has been cured, benefits are no longer payable, but recurrences which are attributable to and are connected with the first exposure of the employment are compensable by the employer for whom claimant was working when the infection first began. . . . From this record it appears that claimant has never been cured of the dermatitis which he had at the time he was discharged by his employer, but that the disability is not 'permanent in quality'. Code Sec. 6998-09 (c). . . .

"Also, the circuit court was in error in awarding claimant permanent partial disability benefits, but was correct in awarding him disability benefits to the date of the commission's order.

"Hence, we affirm in part the judgment of the circuit court, reverse it in part, and enter judgment here awarding appellee temporary total disability benefits from January 30, 1957, to February 18, 1957, and from March 10, 1957, to April 1, 1957, with credit for any amounts already paid therefor. . . ."

The cause was then remanded to the Commission to determine whether or not appellee had been cured of contact dermatitis received while working for the employer, and if so, when he recovered, and for the award of benefits to the date of recovery.

▆▆ ▆▆ The Workmen's Compensation Commission determined in the instant case that claimant's disability was partial, and we are of the opinion there is substantial evidence in the record to sustain this holding. On the other hand — we have reached the conclusion that there is no substantial medical testimony in this

record on which to base a finding that the complainant is suffering from a permanent partial disability. We are of the opinion, and so hold, that the complainant was suffering from temporary partial disability at the time he was discharged on June 4, 1961. The circuit court was in error in awarding claimant permanent total disability benefits, and the order of the circuit court is reversed. The order of the Workmen's Compensation Commission is modified so as to find claimant entitled to temporary partial disability benefits beginning June 4, 1961, and continuing until the 18th day of October 1963, the date of the Commission's order, plus interest at the rate of six percent per annum from the date of each installment of compensation benefits so awarded.

The cause is remanded to the Commission to determine if appellee has been cured of the contact dermatitis received while working for the employer, and, if so, when he recovered, and for the award of benefits to the date of recovery; and if claimant has not yet recovered from such employment-connected disease, or the continuance of such temporary benefits until claimant has reached maximum medical recovery. Jackson Ready-Mix Concrete v. Young, 236 Miss. 550, 111 So. 2d 255 (1959); Komp Equipment Co. v. Clinton, *supra.*

Affirmed in part, reversed in part, and judgment rendered awarding appellee temporary partial disability benefits to date of Commission's order; and cause remanded to the Commission, for further proceedings not inconsistent with this opinion.

*Kyle, P. J., and Ethridge, Brady and Inzer, JJ.,* concur.