MID-SOUTH PACKERS, INC., et al. *v.* HANSON

No. 43598 October 4, 1965 178 So. 2d 689

*Mitchell, McNutt & Bush,* Tupelo, for appellant and cross-appellee.

*Scribner & Brewer,* Tupelo, for appellee and cross-appellant.

ETHRIDGE, P. J.

This workmen's compensation case involves questions of whether claimant's contraction of brucellosis or undulant fever was an accidental injury or an uncovered occupational disease; if an injury, its approximate date; and whether there is substantial evidence to support the Workmen's Compensation Commission's award of temporary disability benefits during two periods, and de-

nials of benefits during two other periods of time. We conclude there was adequate evidence to support the commission's order, which is reinstated and affirmed, thus reversing in part the judgment of the Circuit Court of Lee County.

William Charles Hanson worked as a maintenance man for appellant, Mid-South Packers, Inc., in the tankage room of the packing house. This room disposed of all waste from slaughter of various animals. Hanson repaired the "gut hasher," installing new saws on it and other machinery, and doing general maintenance work. He stated that his work on this machinery and the saws kept his hands cut and scratched. In August of 1960, he began aching all over, and had headaches, sweats and fever, and general weakness. He went to Dr. Aubrey Harris, who put him in the hospital from August 16-30, 1960. Harris diagnosed his illness as brucellosis or undulant fever, and treated him accordingly.

Over a year before this incident, in July 1959, Hanson, while working for Mid-South Packers, was hospitalized for about a week by Dr. James Green, who later advised Dr. Harris that he thought that Hanson "possibly had undulant fever," but laboratory studies failed to confirm this to Dr. Green.

Hanson was sick and did not work from August 10 to September 13, 1960 (Period 1). He worked for Mid-South Packers from the latter date through December 17, 1961 (Period 2), for what the commission found was a salary substantially the same as he was making before the injury. It concluded that any loss of wages, which was small, for this period was due "to circumstances in connection with a change of shift and not because of any temporary partial disability occasioned by an injury." On December 17, 1961, claimant was discharged. Period 3 runs from that date until May 7, 1962. Dr. Leonard Posey made an extensive examination of Hanson on that date. Although laboratory tests indicated

that he had had brucellosis in the past, they also reflected that Hanson was not suffering from any aftereffects of that disease. In Posey's opinion, Hanson did not have any disability from brucellosis.

Period 4 covers May 7 to September 1962 when Dr. Harris last examined claimant. Both of them stated that during this period Hanson had frequent flareups of the disease and was unable to work. However, Harris further said that since July 1961 Hanson's blood agglutination tests remained within normal limits.

The attorney-referee allowed temporary total disability from August 10 to September 13, 1960; temporary partial from September 13, 1960 to December 17, 1961; temporary total from December 18, 1961 to May 17, 1962; and disallowed any benefits from May 7 to September 1962. The commission affirmed the attorney-referee, except that it disallowed benefits for Period 2, September 13, 1960 to December 17, 1961. The circuit court reinstated the referee's order as its judgment.

Mid-South Packers contends that the evidence showed no accidental injury or any approximate date for it; and there was substantial evidence for the commission to deny disability benefits for Period 2. Hanson crossappeals, asserting he was entitled to temporary total disability for Period 4.

■■ ■ There was substantial evidence to support the Commission's finding that Hanson suffered an accidental injury arising out of and in the course of his employment on or shortly before August 10, 1960. Claimant stated that he began to feel ill about two weeks before he went to the hospital on August 16. Although some evidence indicates this was a recurrence of the 1959 illness, the latter was not diagnosed as undulant fever, and the Commission was justified in concluding that within two weeks of hospitalization in 1960, claimant contracted the undulant fever. ■■■ Moreover, although Mid-South Packers changed its insurance carriers in

July 1960, the Mississippi act does not provide for contribution between insurance carriers, or for any method by which the Commission may adjust equities between carriers. The August 1960 incident was a new onset and injury at that time. Thyer Mfg. Co. v. Mooney, 252 Miss. 629, 173 So. 2d 652 (1965); U. S. F. & G. Co. v. Collins, 231 Miss. 319, 95 So. 2d 456 (1957).

 It is not necessary that an accidental injury result suddenly or from the application of external force. A reasonably definite time is all that is required. Hardin's Bakeries v. Ranager, 217 Miss. 463, 64 So. 2d 705 (1953); Christopher v. City Grill, 218 Miss. 638, 67 So. 2d 694 (1953). In the instant case, Hanson incurred on his job numerous cuts and scratches while handling, in a packing house, waste products from slaughtered cattle. As in *Hardin's Bakeries,* the accidental injury from the contraction of undulant fever was an occurrence which was not expected, designed, or intentionally caused. A few cases of this disease from Mid-South Packers had been reported, but their number did not indicate that a workman in claimant's position could expect to receive such a disease.

This conclusion is supported by somewhat similar cases from other jurisdictions. Crowley v. Idaho Industrial Training School, 53 Idaho 606, 26 P. 2d 180 (1933) (undulant fever); Federal Underwriters Exch. v. Hightower, 142 S. W. 2d 963 (Tex. Civ. App. 1940) (undulant fever); General Acc. Fire & Life Ass. Corp. v. Waldon, 121 Ind. App. 1, 94 N. E. 2d 487 (1950) (undulant fever); Roe v. Boise Grocery Co., 53 Idaho 82, 21 P. 2d 910 (1933) (spotted fever); Hiers v. John A. Hull & Co., 178 App. Div. 350, 164 N. Y. Supp. 767 (Sup. Ct. 1917) (anthrax from handling cattle hides); Chicago Rawhide Mfg. Co. v. Industrial Comm'n., 291 Ill. 616, 126 N. E. 616 (1920) (anthrax from tanning hides); 5 Schneider, Workmen's Compensation §§ 1408, 1456 (1946); 99 C. J. S. *Workmen's Compensation* § 168

(1958); 1 Larson, Workmen's Compensation §§ 41.31, 40.20 (1965); Horowitz, Workmen's Compensation Law 149 (1944); Larson, *Workmen's Compensation in Mississippi*: *The First Five Years*, 25 Miss. L. J. 109, 112-117 (1954); but see Loomis v. Industrial Comm'n., 216 Wis. 202, 256 N. W. 693 (1934); Leonard v. Kraft Foods Co., 122 Ind. App. 131, 102 N. E. 2d 512 (1951).

■■ ■ As to Period 1, the evidence shows that claimant was temporarily totally disabled. The Commission properly denied compensation for Period 2, during which Hanson worked for Mid-South Packers on what the payroll records reflected was a fulltime job, at substantially the same salary he made before the injury. It thought that any dimunition in wages was not due to loss of wage-earning capacity, but to circumstances in connection with a change of shift. There was evidence to support an award for temporary total disability for Period 3, prior to the clinical examination by Dr. Posey, and a denial of compensation thereafter for Period 4. Hanson's cross-appeal claiming compensation for the last period is without merit.

Reversed in part on direct appeal, and judgment rendered here reinstating and affirming order of Workmen's Compensation Commission; on cross-appeal, affirmed.

*Rodgers, Jones, Patterson and Smith, JJ.*, concur.