BRADY, Justice.
From an order of the Attorney Referee which was affirmed by the full Commission and subsequently affirmed by judgment of the Circuit Court of Rankin County, this appeal is prosecuted. While the basic facts in this cause are not too prolix, they are severely contested, and it is earnestly urged that the findings of the Attorney Referee, the Commission, and the circuit court are not supported by any substantial evidence and are against the overwhelming weight of the evidence and manifestly wrong. It is, therefore, incumbent upon this Court to present those facts which are in issue which have a material bearing upon this and the other meritorious assignments of error.
It is essential in the disposition of this case that the decision and order of the Attorney Referee be fully presented in order that those assignments of error meriting discussion urged by claimant, the employer and the carrier can be disposed of. The Attorney Referee held, and the record discloses,- that Mrs. Ruby S. Arender at the time of her injury had a weekly wage of $44; that she sustained injuries on June 14, 1962, and that she sustained another injury on January 11, 1963, which was compensa-ble, separate and apart from the injuries of June 14, 1962.
The Attorney Referee stated that the issues were whether or not the claimant sustained an accidental injury on January 11, 1963, and, if so, which insurance carrier had the coverage at that time. There is no dispute that the claimant sustained an injur; on June 14, 1962. She was treated conservatively for a herniated disc. The record discloses that she missed three weeks and three days from work and that she then returned to work on July 9, 1962, and that she continued to work from that date up to and through January 11, 1963; that during this time she was never free from pain in her back.
The record does not disclose that she formally reported on January 11, 1963, that she had sustained a new injury but she did telephone her supervisor who went to the hospital to see her. She did not plead a second injury in her B-S and B-ll. However, on January 11, 1963, the claimant experienced an onset of severe pain while she was working at a patty machine, which prevented her from returning to work. The machine failed in operation. She attempted to readjust it and strained her back in so doing.
After seeing several doctors, who treated her and tried to relieve and correct her condition, she was hospitalized under the care of Dr. Forrest Tutor, Neurosurgeon, from March 22 through April 3, 1963. Surgery was performed, two herniated discs were removed, and she was dismissed on July 17, 1963, as having reached the maximum medical improvement, and with a fifteen percent medical disability. It was the testimony of Dr. Tutor that claimant could return to work but that it should be restricted so that she would not be required to lift more than twenty pounds of weight, and that she should not be bending forward and straightening up or turning from side to side. '
The Attorney Referee held on the question of coverage that the proof shows that Liberty Mutual Insurance Company, hereinafter called Liberty, had the coverage for the workmen’s compensation benefits on June 14, 1962, and on December 14, 1962, Liberty issued its A-24 revised form to the Mississippi Workmen’s Compensation Commission showing that it had the coverage for workmen’s compensation benefits from January 1, 1963, through January 1, 1964.
On March 28, 1963, Liberty filed with the Commission proper notice that this coverage was canceled. The Attorney Referee held also that on January 1, 1963, American Mutual Liability Insurance Company, hereinafter called American, filed an A-24 card with the Commission showing that compensation coverage was provided for the employer-defendant from January 1, 1963, through January 1, 1964. The record discloses, and the Attorney Referee so held, *582 that the medical proof is to the effect that an injured disc treated conservatively will ■either get smaller, get larger, or suddenly enlarge with injury. The medical proof is also to the effect that her routine job completed the pathological process which made her condition disabling. Based upon this evidence, the Attorney Referee made the following findings of fact:
1. That claimant sustained an accidental injury on June 14, 1962 and on January 11, 1963 which produced her present disability;
2. That claimant’s condition prior to January 11, 1963 materially contributed to the results following the January 11, 1963 injury and that such contribution is hereby fixed as being two-thirds or 662/3 percent;
3. That claimant reached maximum improvement on July 17, 1963 and that she has sustained a 20 percent wage earning loss in the same or other employment ;
4. That claimant’s average weekly wage at the time of the injuries was $44.-00; and
5. That no adjudication is made as to whether one insurance carrier had exclusive coverage on January 11, 1963 since that appears to be a controversy for another forum.
The Attorney Referee then ordered as follows:
It is therefore ordered that National Sales, Inc., employer, and Liberty Mutual Insurance Company, carrier, and American Mutual Liability Insurance Company, carrier, furnish medical benefits as provided by the Act and pay claimant compensation without penalty for temporary total disability from January 11, 1963 through July 17, 1963 at the rate of $29.33 per week, and it is further ordered that said employer-defendant and insurance carriers pay claimant compensation from July 17, 1963 without penalty at the rate of $5.87 per week for 20 percent loss of wage earning capacity subject to the limitations of the Act; and
It is further ordered that the liability of American Mutual Liability Insurance Company shall be limited to one-third (j4) of said weekly benefits.
SO ORDERED, this 30th day of October, 1964.
(s) J. T. Hill
J. T. HILL, ATTORNEY REFEREE
On May 19, 1965, the full Commission entered its order holding that the order of the Attorney Referee of October 30, 1964, did not contain error of fact or law, and that the same is correct and should be and is hereby affirmed.
On May 26, 1965, the claimant, Mrs. Ruby S. Arender, filed an application for the approval of a compromise settlement with Liberty, which was joined in by National Sales, Inc., the employer. The request and application for settlement were made pursuant to the provisions of Section 9(1) of the Mississippi Workmen’s Compensation Law as amended.
In order to compromise and finally settle the disagreement between the parties as to the extent of disability suffered by claimant as a result of the injuries of June 14, 1962, Liberty agreed to pay the claimant the sum of $2283.35, without discount, in addition to the temporary total disability benefits heretofore paid, and in addition to the medical benefits which had been heretofore furnished. The claimant maintained that the offer of compromise would in nowise affect the liability of the employer and the compensation insurance carrier, American, it being specifically understood that such payment is made for and on behalf of the injury of June 14 and the consequences thereof and that it is to the best interest of said claimant to permit her to accept said payment in full settlement, compromise and accord.
*583 On May 26, 1965, the Workmen’s Compensation Commission permitted, ratified and approved the compromise settlement. On May 27, 1965, the day following the order of compromise with Liberty, the claimant appealed to the Circuit Court of Rankin County and prosecuted an appeal against National Sales, Inc., and American.
Eleven assignments of error are urged by appellant and nine cross-assignments of error are urged by appellees, all of which we have carefully considered but which do not require delineation here. All errors assigned in essence present four fundamental issues, the first of which is as follows:
1. Which company, American or Liberty, had coverage of National Sales, Inc., on January 11, 1963?
We find that the Commission had the authority to hold and was correct in holding that American was the sole carrier of workmen’s compensation insurance for claimant’s employer on January 11, 1963. Mid-South Packers, Inc. v. Hanson, 253 Miss. 703, 178 So.2d 689 (1965). Liberty, the carrier on June 14, 1962, filed with the Commission an A-24 form showing that Liberty was the carrier for National Sales, the claimant’s employer, for the period from January 1, 1963, to January 1, 1964. On March 28, 1963, Liberty filed another A-24 with the Commission which reflected that the insurer had dropped its coverage of National Sales, Inc., effective January 1, 1963. National Sales, Inc., filed a form number 1473 on February 1, 1963, which stated that American was the carrier for National Sales, Inc., for the period from January 1, 1963, to January 1, 1964. No form A-24 showing that American accepted coverage from January 1, 1963, is found in the record. However, a policy of workmen’s compensation insurance from American to National Sales, Inc., covering the period of January 1, 1963, to January 1, 1964, is a part of the record in this case.
The applicable section of the Mississippi Code states that no workmen’s compensation insurance policy shall be canceled within the period of coverage of the policy unless a notice is filed with the Commission, and that:
No such cancellation shall be effective until thirty (30) days after the service of such notice, unless the employer has obtained other insurance coverage, in which case such policy shall be deemed cancelled as of the effective date of such other insurance, whether or not such notice has been given. Miss.Code Ann. § 6998-39 (1952). (Emphasis added.)
Commission Rule 5 is patterned after this statute, and makes similar provisions for notice before cancellation of coverage. This Court has stated in the case of T. H. Mastin & Company v. Russell, 214 Miss. 700, 708, 59 So.2d 321, 323 (1952), that the purpose of the statute and the Commission rule is “assurance to the commission that eligible employees are protected under the act.”
Although the form A-24 which Liberty filed on March 28, 1963, would not, of itself, have been sufficient to relieve that company of liability until thirty days had passed, the necessity of thirty days notice was circumvented by the issuance by American of its policy showing on its face an effective date of January 1, 1963. The basic objective of the statute is preserved and proper effect is given to the rule of the Commission.
We next consider the second issue, which is as follows:
2. Did the claimant, Mrs. Arender, suffer a second injury on January 11, 1963, or was her disability merely the result of the injury of June 14, 1962?
This question was properly resolved by the Commission when it held that the claimant sustained a second injury on January 11, 1963. While it is apparent that a former injury on June 14, 1962, was sustained by the appellant and that her routine job completed the pathological process *584 which made her condition disabling, the fact nevertheless remains that January 11, 1963, when endeavoring to remove some heavy steel plates from the patty machine, she did sustain a second trauma which ultimately resulted in her having to undergo the operation. Ironically, on recross-examination by attorneys representing appel-lees the elements of the second injury were established, as reflected by these questions and answers:
Q But you had no snapping in your back or any popping or any of the sensations that you had when you hit the floor back in June the 14th, 1962?
A Yes, I sure did.
The proof is sufficient to justify the Commission in finding that appellant sustained a second injury on January 11, 1963, and therefore we will not disturb the Commission’s finding in this regard.
The third question for consideration is:
3. Was the Commission’s award of twenty percent loss of wage earning capacity supported by substantial evidence and justified thereby?
This Court has in numerous cases set forth the matters to be taken into consideration in the determination of loss of wage earning capacity. We have also stated that the percentage of functioning loss or physical disability is not the sole determinative factor. It is the relationship of the claimant’s disability, partial or permanent, to his earning capacity which is controlling. Elliott v. Ross Carrier Co., 220 Miss. 86, 70 So.2d 75 (1954). The doctor’s determination of claimant’s physical disability is not the yardstick by which the wage earning capacity is determined. Ebasco Services, Inc. v. Harris, 227 Miss. 85, 94, 85 So.2d 784, 787 (1956).
It follows, therefore, that the contention of the appellees and cross-appellants that the fifteen percent physical disability determined by the doctors in the case at bar, per se, also fixed the loss in earning capacity, is without merit. The proof in this case shows that appellant can perform any and all acts necessary in employment to which she is fitted, such as waitress or saleslady, except that she should not engage in lifting heavy objects or in a job which requires her to be bending over and straightening up or turning from side to side to any great extent.
To the contrary, appellant’s contention that she is totally disabled is not borne out by the evidence in this case, and under all the facts in this cause the Commission, in our opinion, was justified in awarding a twenty percent loss of wage earning capacity.
The final question for consideration is:
4. Was there an invalid apportionment between successive insurance carriers ?
In resolving this question, the principal difficulty arises from the order of the Commission, affirmed by the circuit court, which directed both Liberty and American to pay permanent partial disability benefits from July 17, 1963, the date of maximum medical improvement, and ordered that American be limited to one-third of these stated weekly benefits, the Commission having determined that appellant sustained a twenty percent wage earning loss and having fixed the rate at $5.87 per week. It should be noted that subsequent to the time the Commission affirmed the Attorney Referee and issued its order, the appellant obtained a compromise settlement with Liberty by which it paid $2,283.35 to her and obtained a release of any liability “for the injury sustained by her on or about June 14, 1962, or of the effects thereof. * * ” This settlement released Liberty from the June 14, 1962, injury or its effects, but of course made no reference to the injury of January 11, 1963. It is evident that after this settlement with Liberty there still remains the order of the Commission to the effect that American is liable for only one-third of the permanent partial disability benefits.
*585 Oft this conflict we feel that the case of Thyer Manufacturing Company v. Mooney, 252 Miss. 629, 639-640, 173 So.2d 652, 656-657 (1965), unless it be distinguishable from the case at bar, will be controlling here. Mooney had several onsets of contact dermatitis, the last of which was in May 1961 at which time the United States Fidelity & Guaranty Company was the insurance carrier. As to a previous onset, Liberty Mutual Insurance Company, which was at that time the insurance carrier, made a compromise settlement with Mooney for $2,500. In that case the Commission found a fifty percent wage earning loss, and that the injury of May 6, 1961, contributed at least fifty percent to Mooney’s present disability. It awarded permanent partial disability and therefore it reduced fifty percent United States Fidelity & Guaranty Company’s liability. On appeal to this Court this holding of the Commission was reversed.
The appellants contended in that case that they were entitled to a reduction in payments because of the apportionment statute. We rejected this contention since the statute “does not provide for contribution between insurance carriers.” We said in the
Mooney case:
The apportionment provision of Mississippi Code Annotated section 6998-04 (Supp.1962) refers only to the amount of compensation to which the injured employee will be entitled, not to how the payments of the compensation will be apportioned among those liable. The reduction in compensation benefits due to the results following injury by a preexisting handicap, disease or lesion, refers to benefits which the injured employee will not receive at all, not to benefits which will be paid by someone else. (252 Miss. at 639, 173 So.2d at 656.)
Therefore, we concluded that the apportionment statute had no bearing on the contribution to be paid by each of the carriers.
In comparing the Mooney case with the case at bar, we note that in Mooney the contact dermatitis presented quite a different injury from the one at bar. In the Mooney case an allergy was involved, with a complete recovery therefrom. In the case at bar, the trauma pain and suffering were continuous from the first through the second injury. In the Mooney case, upon each new contact the allergic condition reappeared. In the case at bar appellant’s routine job completed the pathological process which aided in producing the second injury. Without modifying the rule in the Mooney case, we hold that the Commission was correct in ordering that American should be liable for only one-third of the permanent partial disability benefits. The appellant saw fit to compromise and settle all of her claims on account of the first injury. All that she was entitled to on account of the preexisting injury she acknowledges she has received. From this compromise settlement she has no redress. The record is unmistakably clear that appellant’s second injury was so interrelated to her first injury that without the first injury the second would not have occurred. The Commission’s finding that the first injury contributed to or was responsible for two-thirds of the end result of a twenty percent wage earning capacity loss, or $5.87 per week, is abundantly established by the evidence in this cause.
Section 6998-04 provides in part as follows :
Where a pre-existing physical handicap, disease or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such preexisting physical handicap, disease or lesion contributed to the production of the results following the injury.
It is apparent that the Commission followed the mandate of the foregoing section and reduced the appellant’s compensation because of the preexisting handicap or lesion two-thirds in accordance with the *586 proportion that the first injury contributed to the second injury and ultimate wage earning capacity loss.. The language of the Commission is subject to misinterpretation, but the results reached were proper. American is liable for one-third of the weekly benefits on account of the second injury of January 11, 1963. If National Sales, Inc., had been a self insurer, it could not have been required to pay twice for the first injury and American should not be required to pay for that part of the first injury that contributed to the second one.
For these reasons and as modified, the ■Commission’s order and the circuit court judgment are affirmed.
Affirmed.
ETHRIDGE, C. J., and JONES, INZER and ROBERTSON, JJ., concur.
ON SUGGESTION OF ERROR BY APPELLANT
ETHRIDGE, Chief Justice.
Appellant’s suggestion of error argues that our original opinion permits apportionment of medical benefits. There can be no apportionment of medical benefits under section 7 of the Act. Miss. Code Ann. § 6998-08 (1952); Sanders v. B. E. Walker Construction Co., 251 Miss. 352, 363, 169 So.2d 803, 808 (1964). The Commission’s order, which adopted that of the attorney referee, directed National Sales, Inc., and Liberty Mutual and American Mutual to “furnish medical benefits as provided by the Act. * * * ” That order contemplated the complete payment of all medical expenses resulting from the accident of January 11, 1963
Since we have held that American Mutual was the insurance carrier at the time of the injury of Januáry 11, 1963, it follows that American Mutual and the employer are liable for medical expenses. To the extent that the Commission’s ord.er holds that Liberty Mutual has any liability for such expenses, the order of the Commission is amended to impose liability therefor only upon the employer and American Mutual, and further, to adjudicate that there shall be no apportionment of medical benefits.
The Commission’s order awarded claimant temporary total benefits from January 11 through July 17, 1963. It found that she reached maximum medical recovery on the latter date. It ordered that the employer and both insurance carriers should pay claimant compensation from July 17, 1963, without penalty at the rate of $5.87 per week for 20 percent loss of wage-earning capacity; but it further adjudged that American Mutual’s liability for this 20 percent loss “shall be limited to one-third of said weekly benefits.” The attorney referee’s order was made on October 30, 1964. Since we hold that American Mutual was the only insurance carrier liable for compensation resulting from the January 11, 1963, injury, and the attorney referee limited American Mutual’s liability to one-third of the benefits, it follows that the effect of his order was to apportion the weekly benefits of $5.87 for a period of about fifteen months prior to the order, namely, from July 17, 1963, to October 30, 1964. This was error.
The apportionment statute does not apply to disability benefits until the Commission, or its agent, the attorney referee, on a hearing with medical testimony can determine the proportion of contribution. Apportionment does not apply until that time. Sanders v. B. E. Walker Construction Co., 251 Miss. 352, 169 So.2d 803 (1964), 36 Miss.L.J. 433 (1965); Dillingham Mfg. Co. v. Upton, 252 Miss. 281, 172 So.2d 766 (1965).
Accordingly, the order of the Commission is corrected and amended to provide that American Mutual shall pay claimant compensation without penalty for temporary total disability from January 11 through July 17, 1963, at the rate of $29.33 per week. Further, American Mutual and the employer shall pay claimant permanent *587 partial disability benefits from July 17, 1963, to October 30, 1964, at the rate of $5.87 per week (for 20 percent loss of wage-earning capacity). On and after October 30, 1964, American Mutual and the employer shall pay claimant one-third of said weekly benefits of $5.87 per week, or $1.96 per week, for the loss of wage-earning capacity apportioned to the injury of January 11, 1963, subject to the limitations of the Workmen’s Compensation Act.
There is no merit in the contentions made by appellant on suggestion of error that apportionment is not applicable to these facts, and that she is entitled to the full rate allowed for permanent total disability to the date of the attorney referee’s order. He found that claimant reached maximum medical recovery on July 17, 1963. Temporary total disability extends only during its continuance and until maximum medical recovery. Miss. Code Ann. § 6998-09 (1964 Supp.). After July 17, 1963, claimant suffered a permanent partial disability of loss of wage-earning capacity, and that is herewith awarded after that date until the attorney referee’s order, without apportionment.
Accordingly, the suggestion of error is overruled in part, and sustained in part, only as to the erroneous apportionment of permanent partial disability benefits prior to the date of the attorney referee’s order. In all other respects the suggestion of error is overruled. The judgment entered here will adjudicate that claimant is entitled to medical benefits under the act from the employer and American Mutual without apportionment, and that claimant is entitled to permanent partial disability benefits from July 17, 1963, to October 30, 1964, without apportionment, and thereafter with apportionment as determined above.
Suggestion of error overruled in part, sustained in part, and judgment entered here amending order of Workmen’s Compensation Commission, and as so amended, the order is affirmed on direct appeal; affirmed on cross-appeals of National Sales, Inc., and American Mutual Liability Insurance Company.
JONES, BRADY, INZER and ROBERTSON, JJ., concur.