# IN THE SUPREME COURT OF IOWA

No. 07–1887

Filed March 5, 2010

**IBP, INC.,**

Appellee,

vs.

**LEE BURRESS,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

Employee challenges district court's determination that his brucellosis was an occupational disease and not an injury. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED TO DISTRICT COURT WITH INSTRUCTIONS TO REMAND TO INDUSTRIAL COMMISSIONER.**

Jason D. Neifert of Max Schott & Associates, P.C., Des Moines, for appellant.

Timothy A. Clausen and Sharese Manker of Klass Law Firm, L.L.P., Sioux City, for appellee.

**STREIT, Justice**.

Pigs give us bacon and ham. They can also give meat packers brucellosis. Lee Burress contracted brucellosis while working at IBP, Inc.'s meat-packing plant. He did not discover he had the disease until six years after he left IBP's employment. Soon thereafter, he filed a petition for workers' compensation benefits. The deputy commissioner determined brucellosis was an injury, not an occupational disease. The commissioner affirmed. The district court reversed, concluding Burress suffered from an occupational disease, not an injury. The court of appeals reversed the district court. Because Burress contracted brucellosis from a traumatic event, it is an injury, and his claim for benefits was properly brought under Iowa Code chapter 85 (2009).[1] Nonetheless, because the commissioner relied on an erroneous date to trigger the commencement of the ninety–day period for giving notice of a claim under chapter 85, we remand this case to the district court with instructions to remand to the commissioner for a new determination of the issue of Burress' compliance with the ninety–day notice requirement.

**I. Background Facts and Proceedings.**

Lee Burress worked at IBP, Inc.'s meat-packing plant from 1987 until 1997. During his first few years working there, Burress worked as a jowl and side shaver, a hog sticker (killing the hog by sticking a knife in its throat), and a head dropper (cutting the head off the hog). These positions involved significant contact with hogs and hog blood. On at least one occasion, Burress cut his finger while dropping heads. During his final eight years at IBP, Burress worked in the trolley room, where he was responsible for running automated carts to various places within the

_____

[1]No substantive difference exists in the relevant current code sections and those in force at the time the action arose. Therefore, all references are to the 2009 Iowa Code unless otherwise indicated.

plant. Although he did not have much contact with hogs in this position, he would occasionally come into contact with hog blood. During these eight years, he cut his finger and elbow and sustained a superficial puncture wound to his face. Burress stopped working for IBP in September 1997.

In July 2003, Burress began experiencing hip pain. The source of the hip pain was unclear. Burress underwent hip surgery in September 2003 and developed an infection that lasted for several months. In December 2003, Burress was diagnosed with brucellosis with osteomyelitis. On April 13, 2004, Burress alerted IBP of a potential claim by letter. In December 2004, Dr. William Nauseef explained by letter that Burress contracted brucellosis from hog blood, with skin abrasions being the most common "portal of entry."

On January 3, 2005, Burress filed a workers' compensation petition alleging he had developed "chronic infection, hips, bone" as a result of his "[c]ontact with blood products and tissue from slaughtered hogs." In its answer to the petition, IBP alleged the claimed injury is an occupational disease, not an injury, under Iowa Code chapter 85A, and, therefore, recovery is barred under section 85A.12.[2]

Following a hearing, the deputy commissioner determined "[s]ince it is most likely [Burress] contracted brucellosis as a result of trauma, the injury is an injury under chapter 85, not an occupational disease." The deputy commissioner also found Burress did not become "aware of the probable compensable character of his condition until sometime in early December of 2004," and his petition was filed within two years, as

---

[2]Under section 85A.12, an employer is relieved from liability one year after the worker's last exposure.

prescribed by chapter 85. The deputy commissioner awarded Burress permanent partial disability benefits.

IBP filed an application for rehearing, which the deputy commissioner denied. On intra-agency appeal, the commissioner affirmed and adopted the deputy commissioner's arbitration decision with one modification, that Burress met the definition of being permanently and totally disabled and was thus entitled to permanent total disability benefits.

IBP filed a petition for judicial review raising four issues: (1) whether the agency erred in determining Burress' brucellosis was an injury, (2) whether the agency erred by holding Burress complied with the statute of limitations and the ninety-day notice provision in Iowa Code section 85.23, (3) whether the agency improperly adjusted Burress' benefits from permanent partial to permanent total disability, and (4) whether the agency erred in assessing a penalty against IBP.

The district court reversed the agency's decision, concluding Burress suffered from an occupational disease, not an injury. The court determined Burress failed to file his petition within one year after the last exposure, as required by Iowa Code section 85A.12. Burress appealed.

We transferred the case to the court of appeals, which reversed the district court's decision, finding the commissioner's determination Burress had suffered an injury was supported by substantial evidence. IBP appealed.

**II.  Scope of Review.**

We review the commissioner's legal findings for correction of errors at law. Iowa Code § 17A.19(10)(*c*), (*m*); *Perkins v. HEA of Iowa, Inc.*, 651 N.W.2d 40, 43 (Iowa 2002). "Our task is to determine whether the district court, acting in its appellate capacity in these judicial review

proceedings, applied the law correctly." *Noble v. Lamoni Prods.*, 512 N.W.2d 290, 292 (Iowa 1994). We are bound by the commissioner's findings of fact so long as those findings are supported by substantial evidence. Iowa Code § 17A.19(10)(*f*); *Excel Corp. v. Smithart,* 654 N.W.2d 891, 896 (Iowa 2002). Under Iowa Code section 17A.19(10), "a reviewing court may reverse the decision of the workers' compensation commissioner if it is unsupported by substantial evidence in the record or characterized by an abuse of discretion." *Univ. of Iowa Hosps. & Clinics v. Waters*, 674 N.W.2d 92, 95 (Iowa 2004).

> "*Substantial evidence*" means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.

Iowa Code § 17A.19(10)(*f*)(1). An abuse of discretion occurs when the commissioner's exercise of discretion is "clearly erroneous or rests on untenable grounds." *Waters*, 674 N.W.2d at 96.

**III. Merits.**

Today we must determine whether the brucellosis Burress contracted is an injury or an occupational disease. The legislature has set forth two workers' compensation schemes: one for injuries under Iowa Code chapter 85 and one for occupational diseases under chapter 85A. In order to qualify for workers' compensation benefits under chapter 85, the employee must demonstrate "(1) the claimant suffered a 'personal injury,' (2) the claimant and the respondent had an employer-employee relationship, (3) the injury arose out of the employment, and (4) the injury arose in the course of the employment." *Meyer v. IBP, Inc.,* 710 N.W.2d 213, 220 (Iowa 2006). Comparatively, to recover under chapter 85A, "the disease must be causally related to the exposure to

harmful conditions of the field of employment," and "those harmful conditions must be more prevalent in the employment concerned than in everyday life or in other occupations." *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 190 (Iowa 1980).

If Burress suffers from an occupational disease, his claim is barred by the statute of repose. *See* Iowa Code § 85A.12 ("An employer shall not be liable for any compensation for an occupational disease . . . unless disablement or death results . . . within one year . . . after the last injurious exposure to such disease in such employment . . . .") However, if his brucellosis is an injury, his claim is not barred by the statute of repose, but instead subject to the two-year statute of limitations set forth in section 85.26. *See* Iowa Code § 85.26(1); *see also Swartzendruber v. Schimmel,* 613 N.W.2d 646, 650 (Iowa 2000) (holding the two-year statute of limitations under Iowa Code section 85.26 does not begin to run "until the employee discovers, or should discover in the exercise of diligence, the nature, seriousness, and probable compensable character of the injury or disease").

Thus, whether Burress' brucellosis is an injury or an occupational disease is a key issue. Section 85A.8 defines occupational disease:

> Occupational diseases shall be only those diseases which arise out of and in the course of the employee's employment. Such diseases shall have a direct causal connection with the employment and must have followed as a natural incident thereto from injurious exposure occasioned by the nature of the employment. Such disease must be incidental to the character of the business, occupation or process in which the employee was employed and not independent of the employment. Such disease need not have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have resulted from that source as an incident and rational consequence. A disease which follows from a hazard to which an employee has or would have been equally exposed outside of said occupation is not compensable as an occupational disease.

Although section 85A.8 defines occupational disease, chapter 85 does not adequately define the term "injury." Under section 85.61(4)(*b*), the word "injury . . . shall not include a disease unless it shall result from the injury and . . . shall not include an occupational disease as defined in section 85A.8."

Our case law has filled the gap and explained the differences between an occupational disease and an injury.

> "[A]n 'injury' is distinguished from a 'disease' by virtue of the fact that an injury has its origin in a specific identifiable trauma or physical occurrence or, in the case of repetitive trauma, a series of such occurrences. A disease, on the other hand, originates from a source that is neither traumatic nor physical . . . ."

*Noble*, 512 N.W.2d at 295 (quoting *Luttrell v. Indus. Comm'n*, 507 N.E.2d 533, 541–42 (Ill. App. Ct. 1987)). Thus, the main distinction between an injury and an occupational disease is the method of contraction.

> "The statutory definition describes an occupational disease in terms of a worker's 'exposure' to conditions in the workplace. . . . The term 'exposure' indicates a passive relationship between the worker and his work environment rather than an event or occurrence, or series of occurrences, which constitute injury under the Worker's Compensation Act."

*Id.* (quoting *Duvall v. ICI Americas, Inc.*, 621 N.E.2d 1122, 1125 (Ind. Ct. App. 1993)). We have also determined that, under certain circumstances, a disease can be an injury for purposes of chapter 85.

> "The contraction of disease is deemed an injury by accident in most states if due to some unexpected or unusual event or exposure. Thus, infectious disease may be held accidental if the germs gain entrance through a scratch or through unexpected or abnormal exposure to infection."

*Perkins*, 651 N.W.2d at 43–44 (quoting 3 Arthur Larson & Lex K. Larson, *Larson's Workmen's Compensation Law* ch. 51, Scope, at 51–1 (2002)).[3]

What types of diseases are strictly occupational diseases and not injuries is debatable. Prior to 1973, chapter 85A restricted recovery for occupational diseases to seventeen diseases specifically listed in Iowa Code section 85A.9 (1971). *See McSpadden*, 288 N.W.2d at 190. In 1973, the legislature repealed that section and broadened the definition of occupational disease in section 85A.8. *Id.*; *see also* 1973 Iowa Acts ch. 144, § 24. Currently, chapter 85A makes reference to only two diseases, brucellosis in section 85A.11 and pneumoconiosis ("the characteristic fibrotic condition of the lungs caused by the inhalation of dust particles") in section 85A.13. Our case law has permitted recovery for allergic contact dermatitis and lead intoxication under chapter 85A. *See Doerfer Div. of CCA v. Nicol*, 359 N.W.2d 428, 432 (Iowa 1984); *Frit Indus. v. Langenwalter*, 443 N.W.2d 88, 91 (Iowa Ct. App. 1989). *But see St. Luke's Hosp. v. Gray*, 604 N.W.2d 646, 652 (Iowa 2000) (allergic reactions may be considered injuries under chapter 85). In *McSpadden*, we noted other states considered the following to be occupational diseases: chronic bronchitis, kidney disorder and asthma caused by inhalation of paint fumes, and pulmonary disease caused by inhalation of smoke and fumes. *McSpadden*, 288 N.W.2d at 190–91 n.5. Although

---

[3]Iowa's workers' compensation statute, Iowa Code section 85.61, does not limit compensable injuries to those that are "accidental," and, therefore, it is broader than statutes from other states that do contain an "accidental injury" limitation. *See Ford v. Goode*, 240 Iowa 1219, 1222, 38 N.W.2d 158, 159 (1949) (interpreting 1946 statutory provision, which is substantially similar to the 2009 provision); *see also Perkins,* 651 N.W.2d at 44 (" ' "The injury to the human body here contemplated must be something, *whether an accident or not*, that acts extraneously to the natural processes of nature, and thereby impairs the health, overcomes, injures, interrupts, or destroys some function of the body, or otherwise damages or injures a part or all of the body." ' " (quoting *St. Luke's Hosp. v. Gray,* 604 N.W.2d 646, 650–51 (Iowa 2000) (emphasis added))).

chapter 85A no longer limits recovery for occupational diseases to a specific schedule, section 85A.8 and our case law indicate an occupational disease is generally acquired from repeated exposure to a toxin in the workplace. *See Doerfer*, 359 N.W.2d at 432–33.

Other states have determined that "under the proper factual situations the contraction of brucellosis can be characterized as an accidental injury" rather than an occupational disease. *Wilson Foods Corp. v. Porter*, 612 P.2d 261, 263 (Okla. 1980). Recognizing that "in spite of being recognized as a disease, brucellosis can still be categorized as a[n] accidental personal injury," the Supreme Court of Oklahoma determined an employee who contracted brucellosis through cracks in his skin while working with cowhides had a compensable injury. *Id.*; *see also Baldwin v. Jensen-Salsbery Labs.*, 708 P.2d 556, 557–58 (Kan. Ct. App. 1985) (brucellosis considered accidental injury where employee cut his hand and then touched a tool contaminated with brucella); *Mid-South Packers, Inc. v. Hanson*, 178 So. 2d 689, 690–91 (Miss. 1965) (contamination through cuts and scrapes on maintenance worker's hands considered to be accidental injury and not an occupational disease because "contraction of [brucellosis] was an occurrence which was not expected, designed, or intentionally caused").

Here, the deputy commissioner, whose findings were adopted by the commissioner, determined Burress' brucellosis was an injury and not a disease.

> The evidentiary record indicates [Burress] was exposed to brucellosis in an event that occurred unexpectedly. The event, most likely a cut to [his] hand and exposure to blood, was sudden, traumatic, and of a brief duration. It might be said that workers in a hog packing plant have a greater than average risk of contracting brucellosis, but that risk is the result of risk from a traumatic injury under circumstances

that result in infection of the disease as a consequence of trauma.

IBP contends the commissioner's decision that Burress' brucellosis was an injury, and not an occupational disease, was not supported by substantial evidence. Arguing that since Iowa Code section 85A.11 discusses brucellosis,[4] and that Iowa Code section 85.61(4)(*b*) defines "injury" as excluding occupational diseases, IBP asserts brucellosis can never be considered an injury under chapter 85.

First, we disagree with IBP and the district court that brucellosis can never be an injury. Just because brucellosis is listed in Iowa Code section 85A.11 does not mean brucellosis is always considered an

---

[4]Entitled "Diagnosis for brucellosis," section 85A.11 reads

1. When any employee is clinically diagnosed as having brucellosis (undulant fever), it shall not be considered that the employee has the disease unless the clinical diagnosis is confirmed by:

*a.* A positive blood culture for brucella organisms, or

*b.* A positive agglutination test which must be verified by not less than two successive positive agglutination tests, each of which tests shall be positive in a titer of one to one hundred sixty or higher. Said subsequent agglutination tests must be made of specimens taken not less than seven nor more than ten days after each preceding test.

2. The specimens for the tests required herein must be taken by a licensed practicing physician or osteopathic physician, and immediately delivered to the university hygienic laboratory of the Iowa department of public health at Iowa City, and each such specimen shall be in a container upon which is plainly printed the name and address of the subject, the date when the specimen was taken, the name and address of the subject's employer and a certificate by the physician or osteopathic physician that the physician took the specimen from the named subject on the date stated over the physician's signature and address.

3. The state hygienic laboratory shall immediately make the test and upon completion thereof it shall send a report of the result of such test to the physician or osteopathic physician from whom the specimen was received and also to the employer.

4. In the event of a dispute as to whether the employee has brucellosis, the matter shall be determined as any other disputed case.

occupational disease. Our case law has established that a disease can be an injury for purposes of chapter 85 when " 'the germs gain entrance through a scratch or through unexpected or abnormal exposure to infection.' " *Perkins*, 651 N.W.2d at 43–44 (quoting 3 Arthur Larson & Lex K. Larson, *Larson's Workmen's Compensation Law* ch. 51, Scope, at 51–1). In *Perkins*, we determined the employee's hepatitis C was an injury because her "infection was linked to a sudden, specific incident of exposure." *Id.* at 43. Such is the case here. It would be inconsistent to preclude recovery for a disease that was most likely acquired through a similar unexpected trauma only because section 85A.11 explains how a diagnosis of brucellosis should be confirmed. There is nothing in the record to indicate that Burress contracted brucellosis through a passive exposure to conditions in the workplace. *Noble*, 512 N.W.2d at 295. Burress did not contract brucellosis through prolonged or passive exposure; it only took one traumatic exposure. As the expert's description of how brucellosis is acquired indicates, "[t]he portal of entry [for brucellosis] is through abrasions in skin, most commonly, during handling of infected animals or their carcasses. There is risk of aerosol transmission in slaughter houses as well, although this appears to be less common."

Further, just because Burress cannot pinpoint when the injury specifically occurred does not mean he did not suffer an injury. In *Gray*, we determined the employee's latex allergy to be an injury despite the fact the employee had not been injured on a specific date, but rather was exposed to the allergen on a frequent basis in the course of employment. 604 N.W.2d at 652. Here, the record reveals Burress was exposed to a significant amount of hog blood while dropping heads and sticking hogs and occasionally came into contact with hog blood in the trolley room. In all *probability*, he contracted brucellosis during one of these incidents.

However, because Burress' brucellosis did not manifest itself until 2003, six years after his last reported work-related injury, it is difficult to link contracting the disease to one specific injury. The states that have considered the contraction of brucellosis an injury have permitted recovery despite the fact that the claimant was not able to pinpoint the specific incident of exposure that resulted in contraction of the disease. *See Mid-South Packers,* 178 So. 2d at 691 (contamination through cuts and scrapes on maintenance worker's hands considered to be an accidental injury); *Wilson Foods,* 612 P.2d at 264 (employee who contracted brucellosis through cracks in his skin while working with cowhides had a compensable injury).

Our case law reveals that contact with infected blood is an "injury" under Iowa Code chapter 85. In *Perkins,* the claimant was infected with hepatitis C when she was sprayed with blood while working on a patient. *Perkins,* 651 N.W.2d at 42. We determined this "sudden, specific incident of exposure" to be an injury despite the fact that Perkins was not "injured" per se. *Id.* at 43–44. The injury was being doused with infected blood, not being accidentally cut. *Id.* In our case, Burress testified he was frequently sprayed with and soaked in blood while shaving and slaughtering hogs. Should our analysis of whether Burress sustained an identifiable injury under Iowa Code chapter 85 be any different because he sustained multiple injuries (numerous unexpected contacts with hog blood), none of which he was able to specifically link to his brucellosis? We doubt our conclusion in *Perkins* would have been any different had Perkins come into contact with a patient's infected blood on more than one occasion.

Despite the fact that brucellosis is discussed in chapter 85A, the record supports the conclusion Burress probably acquired brucellosis from contact with infected hog blood. There is substantial evidence

supporting the commissioner's determination that Burress' contraction of brucellosis is an injury, not an occupational disease: Burress' testimony indicating various cuts (portals of entry) and frequent contact with hog blood while working at IBP and the expert's description of how brucellosis is usually acquired. IBP did not present any evidence indicating Burress had contracted brucellosis in a manner consistent with the definition of occupational disease in section 85A.8. It simply relied on the reference to brucellosis in section 85A.11. There is substantial evidence in the record supporting the commissioner's decision Burress contracted brucellosis from a traumatic occurrence: the entry of infected hog blood into Burress' body.

### IV. Additional Issues.

IBP petitioned the district court for judicial review of four issues. The district court dismissed the case based on a determination that Burress suffered an occupational disease for which the statute of repose had run. The district court did not reach the additional three issues. We reverse the district court's determination, and therefore, three issues remain. " '[W]here the district court has not reached certain issues because they were deemed unnecessary to the decision under the rationale it elected to invoke,' we may 'in the interest of sound judicial administration' decide the issues where they have been fully briefed and argued." *Chauffeurs, Teamsters & Helpers, Local Union No. 238 v. Iowa Civil Rights Comm'n,* 394 N.W.2d 375, 378 (Iowa 1986) (quoting *Barnes v. Iowa Dep't of Transp.,* 385 N.W.2d 260, 263 (Iowa 1986)). The additional issues here were fully briefed before the district court. Additionally, the factual record is complete. In contested cases, the district court may not hear additional factual evidence apart from the agency record.[5] Iowa

---

[5]Prior to the judicial review hearing date, a party may make application to the court for leave to present additional evidence if it is material and there were good

Code § 17A.19(7). Based on the briefing and the complete factual record, we choose to address the remaining issues.

A. **Discovery Rule.** IBP argues the agency inappropriately applied the discovery rule to the two-year statute of limitations and Iowa Code section 85.23, which provides that employees must give their employers notice of injuries within ninety days. The discovery rule can be applied to both the statute of limitations and the ninety-day notice requirement. *See Orr v. Lewis Cent. Sch. Dist.,* 298 N.W.2d 256, 258 (Iowa 1980). IBP bore the burden to prove non-compliance with the statute of limitations or ninety-day notice provision and Burress bore the burden to establish any discovery rule exception. *Ranney v. Parawax Co.,* 582 N.W.2d 152, 154 (Iowa 1998). Burress established the discovery rule applies here because the nature of the initial traumatic event, the entry of infected hog blood into his body, was not such that Burress should have realized it produced a compensable injury. *See Johnson v. Heartland Specialty Foods*, 672 N.W.2d 326, 328 (Iowa 2003) ("Under the discovery rule, the time within which a proceeding must be commenced does not begin to run until the claimant, as a responsible person, should recognize the nature, seriousness, and probable compensable character of the condition."). Burress was first diagnosed with brucellosis in December 2003 and filed a workers' compensation claim against IBP in January 2005, well within the two-year statute of limitations even if we assume he first became aware of the connection between brucellosis and his work at IBP at the time of his diagnosis.

IBP argues, however, that Burress became aware of the compensable nature of his brucellosis when he was first diagnosed on

---

reasons for the failure to present it; however, such evidence will then be presented before the agency. Iowa Code § 17A.19(7). No such application was made in this case.

December 16, 2003, and that this was more than ninety days prior to the date on which IBP received notice. IBP received notice of a potential claim by letter on April 13, 2004. The ninety-day notice period does not begin until Burress became aware of the compensable nature of his injury. *See Orr,* 298 N.W.2d at 257–58. The agency applied the discovery rule and held the ninety-day notice requirement did not begin to run until December 8, 2004, the date on which Dr. Nauseef wrote a letter asserting the causal link between brucellosis and IBP. This determination is not supported by substantial evidence because Burress was aware of the potential connection earlier, as indicated by the April 13, 2004 letter from Burress' attorney alerting IBP to the potential claim. *See Ranney,* 582 N.W.2d at 156–57 (holding the discovery rule does not require an expert opinion of causation, but instead, limitations begin to run when the employee discovers the nature, seriousness, and probable compensable character of the injury or disease).

The record suggests Burress did not become aware of the connection between his brucellosis and his work at IBP on the date of his diagnosis, contrary to IBP's argument. Although Dr. Ver Heul commented in his dictated notes regarding the December 16, 2003 diagnosis that "interestingly" Burress had worked in a packing plant, nothing in the record indicates Burress was informed of his doctor's private musings. Burress testified Dr. Ver Heul did not explain how Burress may have contracted the disease when he informed Burress of the diagnosis. Burress also testified that he first learned of the connection from Dr. Nauseef at an educational medical presentation he attended with Dr. Nauseef. Burress testified he was not certain of the exact date, but thought it took place in June 2004. Given the April 2004

letter, Burress' counsel has noted that Burress was likely mistaken as to the date of the presentation he attended with Dr. Nauseef.

Based on the record, it may be possible to determine that Burress first became aware of the nature, seriousness, and compensable nature of his brucellosis within the ninety days prior to the date on which he gave notice, April 13, 2004. Medical records of Burress' appointments indicate that Burress became more aware of the nature, seriousness, and compensable nature of his disease in March and April. Burress testified he did not learn of the connection between brucellosis and his work at IBP from Dr. Ver Heul, who made the diagnosis. Instead, Burress testified he learned of the connection from Dr. Nauseef. Billing records from the University of Iowa, Dr. Nauseef's employer, include bills from November 2003, prior to the diagnosis of brucellosis, and then no bills until March 2004, within the ninety days prior to the April 13, 2004 letter. In March, doctors' notes indicate that Burress sought to find work that could accommodate him, but that his employer would not let him go back to work while he was using a cane. A doctor's note from April 8, 2004, states that Burress was "obviously a little bit discouraged" because he learned the day before from another physician that his brucellosis was "a life-threatening situation and he was going to require a major surgical procedure." Also, the April letter explained that while Burress had recently been diagnosed with brucellosis, he had "only more recently" been informed of the connection to his work at IBP. *See Holmquist v. Volkswagen of Am., Inc.*, 261 N.W.2d 516, 523 (Iowa Ct. App. 1977) (holding letter that came into evidence without objection may be used to establish any material fact).

Because we have no factual findings by the commissioner in this regard, we remand to the commissioner for a determination of whether

Burress complied with the ninety-day notice statute. *See Armstrong v. State of Iowa Bldgs. & Grounds*, 382 N.W.2d 161, 165 (Iowa 1986) ("A ground for remand arises when the court determines that the agency action is unsupported by substantial evidence in the record made before the agency," and the court is unable to determine the facts as a matter of law.); *McDowell v. Town of Clarksville*, 241 N.W.2d 904, 909 (Iowa 1976) ("The proper disposition, however, was not for the court to find the facts but rather to return the case to the Commissioner for decision on the record already made.").

**B. Extent of Disability.** IBP argues the agency erred by adjusting the benefits from permanent partial disability to permanent total disability because Burress did not file a cross-appeal within the agency. IBP claims the commissioner's review was limited under Iowa Administrative Code rule 876—4.28(7) to the specific issues identified in IBP's brief, and therefore, the commissioner could not consider the disability award unless Burress filed a cross-appeal. Burress responds that IBP appealed "each and every finding, ruling, and order entered by the Deputy Workers' Compensation Commissioner" in its notice of appeal. Under IBP's interpretation, Burress would have been required to file a cross-appeal before receiving IBP's brief.

It is within the commissioner's authority to re-consider and modify issues on inter-agency appeal. Under Iowa Code section 86.24, the commissioner reviews the deputy commissioner's determination de novo and "may affirm, modify or reverse . . . or the commissioner may remand the decision." *See Giere v. Aase Haugen Homes, Inc.*, 259 Iowa 1065, 1070, 146 N.W.2d 911, 914 (1966). This court has previously held that an award may be increased in favor of the non-appealing claimant by the commissioner. *Jarman v. Collins-Hill Lumber & Coal Co.*, 226 Iowa 1247,

1249–51, 286 N.W. 526, 527–28 (1939). While it is within the commissioner's statutory authority to adjust an award, IBP argues that the commissioner neglected to follow procedural rules implemented by the agency, and therefore, the decision was improper.

Iowa Administrative Code rule 876—4.28(7) states the "appeal will consider the issues presented for review by the appellant and cross-appellant in their briefs and any issues necessarily incident to or dependent upon the issues that are expressly raised." Rule 876—4.28(7) contemplates issues being raised by an appellant or *cross-appellant.* The rules also provide a mechanism for filing a cross-appeal. *See* Iowa Admin. Code r. 876—4.27. Although issues are viewed broadly, *see* Iowa Admin. Code r. 875—4.28(7), and once raised, any issue can be resolved in favor of the non-appealing party, IBP limited the issues raised to what are essentially affirmative defenses and did not challenge whether and to what extent Burress was disabled by his injury.

The rule providing a mechanism for a cross-appeal conflicts with the rule for defining issues by the briefs because Burress would have been required to file a cross-appeal before learning of the issues designated in IBP's brief. When faced with a procedural situation the agency rules do not clearly address, this court has been guided by general provisions. *See Aluminum Co. of Am. v. Musal,* 622 N.W.2d 476, 478–79 (Iowa 2001) (holding when parties appeal but fail to file briefs, commissioner may define issues without following timely notice provision as long as parties are given notice and an opportunity to be heard).

The commissioner has broad authority in agency appeals. Iowa Code section 17A.15(3) provides that in an appeal, an "agency has all the power which it would have in initially making the final decision except as it may limit the issues on notice to the parties or by rule." Additionally,

" '[t]he key to pleading in an administrative process is nothing more than opportunity to prepare and defend' " and " '[t]he test is fundamental fairness, not whether the notice meets technical rules of common law pleading,' " *Waters*, 674 N.W.2d at 97 (quoting James R. Lawyer & Judith Ann Graves Higgs, *Iowa Workers' Compensation—Law & Practice* § 21-7, at 231 (3d ed. 1999) (first quotation); *Oscar Mayer Foods Corp. v. Tasler,* 483 N.W.2d 824, 828 (Iowa 1992) (second quotation)). IBP was not deprived of fundamental fairness: it was informed of the additional issue in Burress' brief and had the opportunity to file a reply brief within ten days. *See* Iowa Admin. Code r. 876—4.28(1). Although the language of rule 876—4.28(7) could be interpreted to require Burress to file a cross-appeal, given the disparity in timing when a party such as IBP files a generalized and comprehensive notice of appeal, it was not improper for the commissioner to consider the additional issue.

IBP argues that even if it was not improper for the commissioner to consider the percentage of disability, the determination of permanent total disability is not supported by substantial evidence. The commissioner properly noted that permanent total disability occurs "when the injury wholly disables the employee from performing work that the employee's experience, training, education, intelligence, and physical capacities would otherwise permit the employee to perform." *See IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 633 (Iowa 2000). Burress was fifty years old at the time of the hearing, had a high school degree, and had spent his life working as a manual laborer or skilled trade person. Dr. Jochims found a twenty percent impairment to the body as a whole. He explained that Burress is restricted from bending, climbing ladders, lifting more than twenty pounds, any kneeling or crawling, and standing for periods of time greater than fifteen minutes. Dr. Jochims opined that

Burress' disability "virtually eliminated any type of standing job or walking job." Burress testified that he did not believe he could return to work at any of his prior jobs because of his physical restrictions. He also testified that it was painful for him to sit for any extended period of time. Burress explained that he might try to open a small engine repair business with the help of Iowa Vocational Rehabilitation Services, but also testified to the difficulties of successfully opening such a shop.

We have previously held similar evidence provides substantial evidence of a permanent total disability. *See Al-Gharib*, 604 N.W.2d at 635 (holding substantial evidence supported permanent total disability where commissioner relied on prior work experience as welder and physical laborer and inability to perform such work in the future, ninth-grade level of functioning, and doctor testimony that claimant was "virtually unemployable"); *see also Dailey v. Pooley Lumber Co.*, 233 Iowa 758, 765–66, 10 N.W.2d 569, 573–74 (1943) (considering claimant's functional disability of seventy-five to one hundred percent, age of sixty-five, limited education, and non-performance of physical labor since injury to uphold award of permanent total disability); *Diederich v. Tri-City Ry.*, 219 Iowa 587, 594, 258 N.W. 899, 902 (1935) (holding claimant suffered permanent total disability where functional disability was only twenty-five or thirty percent, claimant was fifty-nine years of age, claimant had little or no education, and the injury kept the claimant from performing physical work). Based on the similar evidence here, we hold the commissioner's determination of permanent total disability was supported by substantial evidence.

**C. Penalty.** IBP also challenges the commissioner's imposition of a fifty percent penalty of unpaid benefits ($6,922.50). In support, the agency stated:

In a letter, dated December 13, 2004, claimant's counsel, based on Dr. Nauseef's letter of December 8, 2004, requested defendant to voluntarily accept claimant's claim or to give notice of the reasons for denial. This request was repeated in a letter dated December 27, 2004. Defendant did raise affirmative defenses during hearing under Iowa Code sections 85.23 and 85.26. There is no evidence that defendants have an opinion contrary to that of Dr. Nauseef. There is no evidence defendant communicated any basis of the denial of claim to claimant. For the reasons detailed above, a penalty of 50 percent is appropriate. Claimant is owed $6,922.50 in penalty from defendant. (52 weeks x $266.25 x 50 percent).

IBP argues the commissioner relied only on IBP's failure to inform Burress of the reason for its denial of his claim, which "is not an independent ground for awarding penalty benefits." *Keystone Nursing Care Ctr. v. Craddock,* 705 N.W.2d 299, 308 (Iowa 2005). In response, Burress argues the statement "[t]here is no evidence that defendants have an opinion contrary to that of Dr. Nauseef" demonstrates the agency's decision was not only based on IBP's failure to give notice of denial to Burress but also on IBP's failure to rebut the medical opinion on causation.

The standard for assessing a penalty based on non-payment of benefits is whether the employer has reasonable cause or excuse, which

exists if either (1) the delay was necessary for the insurer to investigate the claim or (2) the employer had a reasonable basis to contest the employee's entitlement to benefits. A "reasonable basis" for denial of the claim exists if the claim is "fairly debatable."

*Christensen v. Snap-On Tools Corp.,* 554 N.W.2d 254, 260 (Iowa 1996).

Given the express reference to brucellosis in the occupational disease statute, *see* Iowa Code § 85A.11, IBP had a reasonable basis to believe Burress' brucellosis would be classified as an occupational disease and his claim dismissed because of the one-year statute of

repose. IBP had a reasonable basis to contest the employee's entitlement to benefits, and therefore, imposition of a penalty was improper.

### V. Conclusion.

Because Burress contracted brucellosis from a traumatic event, it is an injury, not an occupational disease, and his claim is not barred under the statute of repose applicable to occupational disease claims. We hold the commissioner's factual finding regarding application of the discovery rule to the ninety-day notice provision was unsupported by substantial evidence. We remand to the district court with instructions to remand the case to the commissioner for reconsideration of the ninety-day notice provision on the record previously made. Additionally, (1) Burress filed his claim within the statute of limitations governing work-related injuries; (2) it was not an abuse of discretion for the commissioner to consider the extent of Burress' disability on intra-agency appeal, and substantial evidence supported an award of permanent total disability; and (3) the award of penalty benefits was improper because IBP had a reasonable basis to contest Burress' entitlement to benefits. Costs on appeal are assessed seventy-five percent to IBP and twenty-five percent to Burress.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED TO DISTRICT COURT WITH INSTRUCTIONS TO REMAND TO INDUSTRIAL COMMISSIONER.**