# IN THE SUPREME COURT OF IOWA

No. 12–0344

Filed April 12, 2013

**BRANDON DEAN WATSON,**

Appellant,

vs.

**IOWA DEPARTMENT OF TRANSPORTATION
MOTOR VEHICLE DIVISION,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Donna L. Paulsen, Judge.

Appellant seeks further review of court of appeals decision affirming the disqualification of his commercial driver's license for one year. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Billy J. Mallory of Brick Gentry, P.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Michelle R. Linkvis, Assistant Attorney General, for appellee.

**HECHT, Justice.**

A commercial driver appeals a one-year disqualification of his commercial driver's license (CDL). The Iowa Department of Transportation (IDOT) suspended his license for operation of a commercial motor vehicle with an alcohol concentration of .04 or more, in violation of Iowa Code section 321.208(1)(*a*) (2011). In review proceedings below, the driver contested the suspension on the ground that the IDOT had erred in concluding that in the CDL context, breathalyzer test results are not to be adjusted for the breathalyzer test's recognized margin of error. The district court and court of appeals affirmed the IDOT decision. Finding no ambiguity in the applicable statutes, we affirm.

## I. Background Facts and Proceedings.

Brandon Watson was driving a commercial motor vehicle in Monroe County, Iowa on October 22, 2010. An Iowa state trooper stopped Watson and, after obtaining consent, administered a DataMaster breathalyzer test. The test result indicated an alcohol concentration of 0.041. Based on the test result, the IDOT determined that Watson had operated a commercial vehicle with an alcohol concentration of .04 or more, in violation of Iowa Code section 321.208(1)(*a*), and issued Watson a notice of a one-year suspension of his CDL. Watson appealed, arguing Iowa's CDL suspension statute requires that the IDOT subtract the breathalyzer's recognized margin of error of .004 from test results, and therefore, the IDOT had insufficient evidence to find he had violated the statute.[1] On intra-agency review, the IDOT sustained the suspension.

---

[1]The parties agree that the recognized margin of error for the DataMaster is .004, and that, had the margin of error been subtracted from Watson's test result, the IDOT would have found an alcohol concentration of .037.

Watson sought judicial review of the agency's decision in Polk County District Court. The district court affirmed the agency's determination in relevant part, holding the agency had correctly concluded the statutory provisions controlling CDL revocations do not authorize margin of error adjustments of breath test results. Watson appealed and we transferred the case to the court of appeals. The court of appeals affirmed. Watson requested further review, and we granted the request to determine whether the IDOT erred in failing to adjust Watson's test result by the margin of error.

## II. Scope of Review.

Iowa Code chapter 17A governs judicial review of agency actions. *Wallace v. Iowa State Bd. of Educ.*, 770 N.W.2d 344, 347 (Iowa 2009). The district court reviews for errors at law. *Ludtke v. Iowa Dep't of Transp.*, 646 N.W.2d 62, 64 (Iowa 2002). On appeal, we apply the standards of chapter 17A to determine whether we reach the same conclusions as the district court. *Id.* at 65. If we reach the same conclusions, we affirm; otherwise we may reverse. *Lee v. Iowa Dep't of Transp.*, 693 N.W.2d 342, 344 (Iowa 2005). We will uphold the IDOT's factual findings if, after reviewing the record as a whole, we determine substantial evidence supports the findings. Iowa Code § 17A.19(10)(*f*).

This case involves the IDOT's interpretation of a statute. Reversal may be warranted where "substantial rights . . . have been prejudiced because the agency action is . . . [b]ased upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency." *Id.* § 17A.19(10)(*c*). Because this is not an area where interpretation of the law has been clearly vested in the discretion of the agency, we need not give deference to the IDOT's interpretation of section 321.208 and may

substitute our judgment de novo for the agency's interpretation. *Lee,* 693 N.W.2d at 344.

### III. Discussion.

Watson contends, as he did below, that under Iowa's CDL suspension statute the IDOT is required to subtract a breathalyzer's standard margin of error from test results before making an alcohol concentration determination. Had the IDOT made the required subtraction, Watson contends, there would have been no evidence to support a suspension under the statute. The IDOT counters that the general margin of error provision in Iowa's operating-while-intoxicated statute does not apply in the CDL context.

Iowa Code section 321.208, entitled "Commercial driver's license disqualification," provides for CDL disqualification as follows:

> 1. A person is disqualified from operating a commercial motor vehicle for one year upon a conviction or final administrative decision that the person has committed any of the following acts or offenses in any state or foreign jurisdiction while operating a commercial motor vehicle:

> *a.* Operating a commercial motor vehicle with an alcohol concentration, as defined in section 321J.1, of 0.04 or more.

> . . . .

> 12. *a.* A person is disqualified from operating a commercial motor vehicle if the person either refuses to submit to chemical testing required under chapter 321J or submits to chemical testing and the results show an alcohol concentration as defined in section 321J.1 of 0.04 or more.

Iowa Code § 321.208. Both provisions refer the IDOT, in determining alcohol concentration in the CDL suspension context, to section 321J.1, which defines alcohol concentration as "the number of grams of alcohol per any of the following:" (a) one hundred milliliters of blood; (b) two

hundred ten liters of breath; or (c) sixty-seven milliliters of urine. *Id.* § 321J.1(1). Section 321J.1 does not, however, address margin of error adjustments of test results. *Id.* § 321J.1.

The margin of error provision at the center of this controversy is set forth in Iowa Code section 321J.12(6), entitled "Test result revocation." The statute provides:

> The results of a chemical test may not be used as the basis for a revocation of a person's driver's license or nonresident operating privilege if the alcohol or drug concentration indicated by the chemical test minus the established margin of error inherent in the device or method used to conduct the chemical test is not equal to or in excess of the level prohibited by section 321J.2 or 321J.2A.

*Id.* § 321J.12(6). This margin of error provision refers expressly to the prohibitions in sections 321J.2 and 321J.2A, which set maximum allowable alcohol concentrations for noncommercial drivers ages twenty-one and up, and noncommercial drivers under the age of twenty-one, respectively. *See id.* §§ 321J.2, .2A. Section 321J.12(6) thus requires that the IDOT, before making a determination of alcohol concentration for the purpose of suspending a noncommercial license, adjust chemical test results downward by the test's standard margin of error.

In interpreting a statute, our goal "is to give effect to the legislative intent of [the] statute." *State v. Schultz*, 604 N.W.2d 60, 62 (Iowa 1999). In addition to the words chosen by the legislature, we will also consider " 'the objects sought to be accomplished and the evils and mischiefs sought to be remedied, seeking a result that will advance, rather than defeat, the statute's purpose.' " *Id.* (quoting *Danker v. Wilimek*, 577 N.W.2d 634, 636 (Iowa 1998)). In construing provisions of the relevant statutes previously, we have searched for the legislature's intent as evidenced by what the legislature said, rather than what it might have

said.  *See State v. Guzman-Juarez*, 591 N.W.2d 1, 2 (Iowa 1999).  We have observed that legislative intent is expressed by omission as well as by inclusion and that the express mention of certain sections implies the exclusion of others.  *Wiebenga v. Iowa Dep't of Transp.*, 530 N.W.2d 732, 735 (Iowa 1995).  We have also explained that when the text of a statute is plain and its meaning clear, the court should not search for a meaning beyond the express terms of the statute.  *Guzman-Juarez*, 591 N.W.2d at 2.

We have noted the high standards our legislature has set in prohibiting drunk driving by commercial drivers, and we have observed that commercial drivers are held to higher standards than noncommercial drivers.  *Wiebenga*, 530 N.W.2d at 735.  We have explained that the legislature has distinguished commercial from noncommercial drivers in various provisions of our drunk driving statutes, in part because commercial drivers are often faced with riskier and more difficult tasks than noncommercial drivers.  *Id.*

Applying these principles of interpretation and policy here, we cannot conclude the legislature intended its margin of error provision in section 321J.12(6) would apply in the CDL suspension context.  The provision, by its express terms, refers only to sections 321J.2 and 321J.2A—sections governing license revocations for noncommercial licensees.  The margin of error provision makes no reference to section 321.208, which governs license revocations for commercial drivers.  The express directive requiring the margin of error adjustment in the noncommercial licensee context and the absence of any reference to such adjustment in the CDL context together inform our conclusion that the legislature never intended margin of error adjustment of CDL operators' test results.  *Wiebenga*, 530 N.W.2d at 735.

Further, in the absence of clear guidance otherwise, we hesitate to read the margin of error provision's explicit reference to sections 321J.2 and 321J.2A as not limiting the provision's application, because such a reading may render the provision illogical or render sections of the provision unnecessary surplusage. In other words, if we read section 321J.12(6) as controlling determinations of alcohol concentration in scenarios other than the noncommercial revocations expressly mentioned, we are left with no clear guidance as to how to read "level prohibited by" and the disjunctive "321J.2 or 321J.2A" language of the provision. According to the provision as unambiguously written, the IDOT must subtract the recognized margin of error from the test result before comparing the result to the maximum allowable concentration in either section 321J.2, if dealing with a noncommercial driver ages twenty-one and up, or section 321J.2A, if dealing with a noncommercial driver under age twenty-one. If the provision were also applicable to commercial suspensions, we think it unlikely the maximum allowable limits in sections 321J.2 and 321J.2A would apply, given that the commercial suspension section sets its own maximum allowable limit. We cannot, however, read the language of section 321J.12(6) referring to noncommercial revocations out of the provision entirely, and thus we would confront questions of which concentration limit applies in various circumstances—questions we do not believe the legislature intended to raise in drafting this provision.

We also think it significant that our legislature adopted the margin of error provision in 1986, added the CDL suspension section in 1990, and, in revisiting the margin of error provision in the years since, has never made it expressly applicable to CDL suspensions. *See, e.g.*, 1986 Iowa Acts ch. 1220, § 12 (adding original margin of error provision); 1990

Iowa Acts ch. 1230, § 51 (adding original CDL suspension provision); 1995 Iowa Acts ch. 48, § 17 (modifying the margin of error provision to refer to both noncommercial drivers ages twenty-one and up, and noncommercial drivers under age twenty-one). The legislature has amended the margin of error provision twice since adopting the CDL suspension provision at issue here and has amended on at least one other occasion other paragraphs in section 321J.12 to modify maximum allowable limits and references to other suspension scenarios. *See* 1995 Iowa Acts ch. 48, § 17; 1998 Iowa Acts ch. 1138, § 20; 2003 Iowa Acts ch. 60, §§ 5–6. Moreover, the legislature added express references to commercial drivers and the maximum allowable commercial limit in *other* sections of 321J when it added the CDL suspension provision in 1990. *See* Iowa Acts 1990 ch. 1230, § 85 (adding commercial vehicle provision to section 321J.6); *id.* § 86 (adding commercial vehicle provision to section 321J.8). The legislature did not, however, amend then and has not since amended section 321J.12(6) to incorporate references to the CDL suspension section, and we cannot conclude the legislature intended this broader application urged by Watson.[2]

Watson advances the additional contention that the CDL suspension provision's "alcohol concentration" language is to be distinguished from "chemical testing," and that the distinction compels adjustment of chemical test results by the recognized margin of error before determining an alcohol concentration. That argument is unpersuasive for two reasons. First, we have already observed that the

---

[2]We observe, as the district court did below, that section 321J.1 defines "driver's license," unless "context otherwise requires," to include a commercial driver's license for the purposes of chapter 321. Iowa Code § 321J.1(7). Because of the plain language of section 321J.12(6) and the ambiguity this broader definition would introduce, however, we conclude context requires the margin of error provision be read with the narrower noncommercial definition.

definition section expressly referenced by the CDL suspension provision defines "alcohol concentration" and makes no mention of margin of error adjustment. We are hesitant to read an additional limitation into "alcohol concentration" not contemplated by the provision's explicit definition. Second, paragraph twelve of the CDL suspension provision, reproduced above, suggests that a chemical test result indicates an alcohol concentration regardless of margin of error adjustment. Iowa Code § 321.208(12)(*a*) (chemical test result may "show an alcohol concentration as defined in section 321J.1."). We cannot conclude the legislature intended to incorporate margin of error adjustment in the CDL suspension context with its choice of specific language in section 321.208.

Having found it logical in the past that the legislature would distinguish commercial drivers from ordinary drivers in revocation proceedings, we find no reason to dismiss the principle here. *Wiebenga*, 530 N.W.2d at 735. We find no indication in the structure or language of the relevant statutes that the legislature intended that a breathalyzer test result be adjusted by the recognized margin of error in making an alcohol concentration determination for the purpose of CDL suspensions.

## IV. Conclusion.

We conclude the IDOT properly interpreted Iowa Code section 321.208. As a result, we conclude the IDOT's finding that Watson's alcohol concentration was 0.041 was supported by substantial evidence. We affirm the agency's one-year suspension of Watson's CDL privilege.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**