# IN THE COURT OF APPEALS OF IOWA

No. 18-1152
Filed April 7, 2019

**RONALD N. McDONALD,**
    Petitioner-Appellant,

**vs.**

**EZ PAYROLL & STAFFING SOLUTIONS, LLC and ZURICH AMERICAN INSURANCE COMPANY,**
    Respondents-Appellees.
_____

Appeal from the Iowa District Court for Johnson County, Lars G. Anderson, Judge.

Ronald N. McDonald appeals from the district court's judicial review ruling upholding the workers' compensation commissioner's denial of permanent disability benefits. **AFFIRMED.**

Eric D. Tindal of Keegan Tindal & Mason, Iowa City, for appellant.

Charles A. Blades of Smith Mills Schrock Blades Monthei, P.C., Cedar Rapids, for appellees.

Considered by Mullins, P.J., Bower, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**DANILSON, Senior Judge.**

Ronald N. McDonald appeals from the district court's judicial review ruling upholding the workers' compensation commissioner's denial of permanent disability benefits. Because we find no abuse of discretion in the commissioner's evidentiary ruling and there is substantial evidence to support the commissioner's determination that McDonald had not proved causation, we affirm the district court in upholding the commissioner's findings.

**I. Background Facts and Proceedings.**

On August 17, 2012, McDonald was hired by EZ Payroll[1] who assigned him to ALPLA, a plastic fabrication company. McDonald began working for ALPLA on August 20 where he was to clean molds used in the production of plastic bottles. This process used water to clean the molds and assure they were properly sealed together after they were cleaned. As part of this process McDonald also used pressurized air to blow debris and water out of the molds, leading McDonald to get misted water droplets in his face. During the same period, McDonald was also working at Proctor & Gamble, where he swept the floors, cleaned public areas, and mopped floors.

On August 27, McDonald was injured at ALPLA while attempting to catch a large cutting blade that had fallen from its sheath. He need surgery, which was scheduled for August 31. However, on August 31, McDonald had a fever when he reported for surgery and surgery was rescheduled.

---

[1] We will refer to EZ Payroll & Staffing Solutions, LLC and its insurer, Zurich American Insurance Company collectively as the employer.

On Monday, September 3, a neighbor looked in on McDonald and noticed he was ill and confused. McDonald was taken by ambulance to the emergency room at Mercy Hospital in Iowa City with a profoundly abnormal neurologic status. He was transferred to the intensive care unit where he underwent testing. McDonald was diagnosed with Legionnaires' disease, pneumonia, respiratory failure, and a brain lesion that was thought to be secondary to Legionella. He also learned he was HIV positive. HIV did not make McDonald more susceptible to Legionnaires' disease but did increase the risk that if acquired the symptoms of the disease would be more severe. Dr. Jack Stapleton was McDonald's treating physician at UIHC.

McDonald sought workers' compensation benefits, asserting his Legionnaire's disease arose out of and in the course of his employment with ALPLA. An arbitration hearing was originally set for March 12, 2015. However, McDonald filed an amendment to his claim on the day before the hearing, asserting an odd-lot claim. The deputy commissioner allowed the amendment and granted the employer's motion to continue hearing, which was rescheduled for June 16.

McDonald submitted the opinion of Dr. Stapleton in support of his claim for workers' compensation: "It is my opinion that Mr. McDonald was exposed to the Legionella bacterium and contracted Legionella pneumonia during his work at ALPLA while spraying molds during the latter part of August 2012." In his deposition, Dr. Stapleton stated,

> Based on the history and the epidemiology and given the exposure to mists—sprays and mists of water, water mist at his employment the week prior to his first fever and the Monday prior to his first fever on Friday before Labor Day, and then diagnosis on—

ten days later, the epidemiology strongly supports that the most likely source is from the spray at work.

The employer submitted the affidavit of Richard Aiken, the Environmental Health, and Safety Manager for ALPLA, provided an affidavit in which he outlined his responsibilities, one of which is "mitigate risks to prevent contaminants from entering our facility or interfere with our manufacturing process." He averred the water within the facility "contains several additives to control microbes and bacteria" and ALPLA utilizes a highly-controlled, closed-circuit water system chemically treated to control any biological issues. Aiken also stated McDonald worked alongside others and his duties were performed by others on other shifts, and after learning of McDonald's claims about Legionella exposure, Aiken "conducted an investigation and reviewed our records dating back to 2010." Aiken stated, "It is my sworn testimony that ALPLA's water supply has never been compromised with Legionella bacteria at any time to my knowledge." He also noted, "ALPLA has no reported cases of Legionella, pneumonia, any respiratory conditions, infections, or exceptional health issues from any team member before, during or after Mr. McDonald's brief period of employment at ALPLA."

Dr. David S. McKinsey, an infectious disease specialist, reviewed Aiken's affidavit, McDonald's medical records, and the depositions of McDonald and Dr. Stapleton and opined the Legionnaires' disease could not be attributed to exposure to water at ALPLA.

Following the hearing, the deputy commissioner ruled in McDonald's favor, finding, "Dr. Stapleton's conclusions concerning causation of the Legionnaires' disease was due to his workplace exposure the most convincing."

The employer appealed to the workers' compensation commissioner. After a de novo review,[2] the commissioner reversed the arbitration ruling and concluded McDonald failed to prove causation for contracting Legionnaires' disease:

> Both Dr. Stapleton and Dr. [Sunil] Bansal [an occupational health physician] appear to be entirely unaware of the procedures followed by ALPLA to prevent contamination of its water supply. Nowhere in the record of this case does it appear either doctor was ever provided with this information. The procedures followed by ALPLA at all times, including the short time period during which claimant worked at ALPLA, include using water supplied by the City of Iowa City, which contains several additives to control microbes and bacteria, using a highly-controlled closed-circuit water system inside the facility and treating the water used within that closed-circuit system with a product called ChemAqua "to control any biological issues to comply with food grade manufacturing processes" and using cold water below 68 degrees Fahrenheit. Nothing in the record indicates Dr. Stapleton and Dr. Bansal were ever made aware of this information. This is crucial information which goes to the very heart of the issue of causation in this matter. . . . I therefore find the opinions of Dr. Stapleton and Dr. Bansal to be unconvincing, as those opinions pertain to the causation of claimant's Legionnaires' disease, because it appears Dr. Stapleton and Dr. Bansal relied upon incomplete information in formulating those opinions.
>   On the other hand, while Dr. McKinsey did not actually evaluate claimant, I find Dr. McKinsey's causation opinion to be persuasive because Dr. McKinsey makes it clear in his report he was aware of the crucial information which was not provided to Dr. Stapleton and Dr. Bansal.

McDonald filed a petition for judicial review in the district court, which upheld the commissioner's findings and conclusions. McDonald now appeals.

---

[2] *See IBP, Inc. v. Burress*, 779 N.W.2d 210, 220 (Iowa 2010):
> It is within the commissioner's authority to re-consider and modify issues on inter-agency appeal. Under Iowa Code section 86.24, the commissioner reviews the deputy commissioner's determination de novo and "may affirm, modify or reverse . . . or the commissioner may remand the decision." *See Giere v. Aase Haugen Homes, Inc.*, 146 N.W.2d 911, 914 (Iowa 1966).

**II. Scope and Standard of Review.**

> Iowa Code chapter 17A governs our review of the commissioner's decision. *See* Iowa Code § 86.26 (2009); *Watson v. Iowa Dep't of Transp.*, 829 N.W.2d 566, 568 (Iowa 2013). The district court acts in an appellate capacity when reviewing the commissioner's decisions to correct errors of law. *See Watson*, 829 N.W.2d at 568; *Ludtke v. Iowa Dep't of Transp.*, 646 N.W.2d 62, 64 (Iowa 2002). "On appeal, we apply the standards of chapter 17A to determine whether we reach the same conclusions as the district court. If we reach the same conclusions, we affirm; otherwise we may reverse." *Watson*, 829 N.W.2d at 568 (citation omitted).

*Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 888–89 (Iowa 2014)

**III. Discussion.**

McDonald's appeal is essentially a two-pronged challenge to the employer's experts' opinions. McDonald argues the commissioner placed undue emphasis on the affidavit of Aiken and the written report of Dr. McKinsey while ignoring or not giving enough emphasis to his expert's opinions. McDonald also asserts the opinions were introduced in an untimely manner and therefore should not have been available for the commissioner to consider. As is often repeated: "Our decision is controlled in large part by the deference we afford to decisions of administrative agencies." *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011).

A claimant seeking workers' compensation benefits has the burden to prove by a preponderance of the evidence the existence of an injury "arising out of or in the course of employment." *See* Iowa Code § 85.3; *Quaker Oats Co. v. Ciha*, 552 N.W.2d 143, 150 (Iowa 1996). "Medical causation presents a question of fact that is vested in the discretion of the workers' compensation commissioner." *Pease*, 807 N.W.2d at 845. Thus, we only disturb the commissioner's finding if it is

unsupported by substantial evidence. *Id.* (citing Iowa Code § 17A.19(10)(f) (2017)).

McDonald notes both Dr. Stapleton and Dr. McKinsey agree his period of exposure to Legionella occurred between August 19 and August 27, 2012, "which align nearly identically with McDonald's employment with EZ Payroll at ALPLA." He asserts his evidence therefore reflected the most likely source of his exposure to Legionella was his work at ALPLA, but the commissioner "effectively" required him to prove he could not have inhaled Legionella bacterium from any other source. The question of causation is for the commissioner in the first instance; our role is limited to whether the commissioner's ruling is supported by substantial evidence.

Substantial evidence is "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1). "When reviewing a finding of fact for substantial evidence, we judge the finding 'in light of all the relevant evidence in the record cited by any party that detracts from that finding as well as all of the relevant evidence in the record cited by any party that supports it.'" *Pease*, 807 N.W.2d at 845 (quoting Iowa Code § 17A.19(10)(f)(3)).

We do not determine whether the evidence supports a different finding. Instead, "our task is to determine whether substantial evidence, viewing the record as a whole, supports the findings actually made." *Id.* "Because the commissioner is charged with weighing the evidence, we liberally and broadly construe the

findings to uphold [the commissioner's] decision." *Schutjer v. Algona Manor Care Ctr.,* 780 N.W.2d 549, 558 (Iowa 2010). "In addition, we give due regard to the commissioner's discretion to accept or reject testimony based on his assessment of witness credibility." *Id.*

Although a close issue, we conclude there is substantial evidence to support the commissioner's finding that McDonald failed to prove his Legionnaires' disease arose out of his employment at ALPLA. Aiken's affidavit and Dr. McKinsey's report both reference the efforts made to mitigate risks of contaminants in the water at ALPLA not known by McDonald's experts. The commissioner determined this was crucial information and therefore concluded Dr. McKinsey's opinion was more persuasive than McDonald's experts. "[T]he determination of whether to accept or reject an expert opinion is within the 'peculiar province' of the commissioner." *Pease*, 807 N.W.2d at 845 (citation omitted). We do not reassess the evidence or make or our own determination of the weight it is to be given. *See Burns v. Bd. of Nursing*, 495 N.W.2d 698, 699 (Iowa 1993). We are troubled by the commissioner's reliance on two exhibits—an affidavit and a physician's report—neither of which was the subject of cross-examination. This reliance is a concern here because there is no evidence that Legionella bacteria was one of the contaminants ALPHA was attempting to mitigate in its water. Yet we acknowledge there was evidence of steps taken to reduce or mitigate contaminants in the water that apparently were not known to McDonald's experts and may cast doubt on the reliability of their opinions.

McDonald also attempts to evade a determination of substantial evidence by attacking the admissibility of Aiken's affidavit and Dr. McKinsey's report. But

we review the commissioner's evidentiary rulings for an abuse of discretion. *See IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 630-31 (Iowa 2000). Here, we adopt the district court's reasoning:

> There had been initial hearing deadlines that were extended following a continuance and [McDonald's] amendment to add his odd-lot claim. In reviewing the record, the court finds that Deputy Elliott specifically stated . . . she did not limit the parties' discovery efforts when she granted [McDonald's] motion to amend, and all parties could continue to develop their cases following the continuance in proceedings. The record does not reflect that [McDonald] sought to have a narrower continuance order, in light of filing his amendment to pursue the odd-lot claim, or that [McDonald] specifically sought to limit discovery following the continuance. Additionally, [McDonald] had access to the Aiken Affidavit and Dr. McKinsey's report more than thirty days before the agency hearing. It does not appear that [McDonald] conducted additional discovery or investigation after receipt of these materials, but prior to the agency hearing date. While [McDonald] has argued that Aiken was an undisclosed expert, the court agrees with [the employer] that Aiken provided only fact testimony regarding water within ALPLA's facility. Nothing about Deputy Elliott's decision to continue the case precluded [the employer] from engaging in additional investigation of their claims during the continuance period, and this includes evidence regarding the water within ALPLA's facility. It does not appear that [McDonald] made any attempt to question or contact Aiken prior the agency hearing date. To the extent that [McDonald] claims Aiken's testimony is hearsay, the court notes that hearsay generally is admissible in administrative proceedings. . . . To the extent that [McDonald] claims Aiken's testimony lacks credibility, the court finds that Aiken's affidavit indicates it is based on his personal knowledge, and it was appropriate for Commissioner Cortese to find the contents of the affidavit to be credible and persuasive.

We find no abuse of discretion in allowing the evidence over McDonald's objection.

McDonald also argues the Commissioner applied a causation standard higher than the proper standard to be applied where a disease constitutes an "injury" under our worker's compensation laws. We disagree with McDonald that the Commissioner imposed a requirement that he must prove there was no other potential sources. The Commissioner's ruling on application for rehearing

specifically addressed the causation issue and the proof relied upon. We find no improper application of the causation standard as may have been suggested in *IBP*, 779 N.W.2d at 218.

Finding no abuse of discretion in admitting the evidence and determining the affidavit and report provide substantial evidence for the commissioner's findings and conclusions, we affirm.

**AFFIRMED.**